STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
NORMAN GREEN, DEFENDANT–APPELLANT.

Argued February 23, 1981—Decided June 10, 1981.

*Monica R. Jacobson,* Assistant Deputy Public Defender, argued the cause for appellant (*Stanley C. Van Ness,* Public Defender, attorney).

*John S. Redden*, Assistant Prosecutor, argued the cause for respondent (*John J. Degnan*, Attorney General of New Jersey, attorney; *Donald S. Coburn*, Essex County Prosecutor, of counsel).

The opinion of the Court was delivered by

SCHREIBER, J.

Defendant Norman Green was indicted, tried and convicted by a jury of rape, possessing a razor while committing the rape, robbery, and possessing a razor while committing the robbery. He was sentenced to an aggregate term of 19 to 25 years. The Appellate Division summarily affirmed. *R.* 2:11–3(e)(2). We granted defendant's petition for certification. 85 N.J. 141 (1980).

Defendant contends that reversal is justified because of the incompleteness of the record due to the court reporter's failure to record the testimony accurately (the record was subsequently reconstructed by the trial court), the excessiveness of the sentence and the inadequacy of the jury charge. In view of our conclusion we find it necessary to consider only the inadequacy of the charge.

There was a sharp dispute in the evidence with respect to the rape and the related charges. A summary of the essential facts will suffice for the purpose of this opinion.

The primary witness for the State was the victim, Joyce Wadley. According to Ms. Wadley, on May 24, 1976, following a quarrel with her boyfriend, she returned alone to their apartment on South 10th Street, Newark. She had misplaced the key and was waiting on the front porch for his return.

About 12:30 a. m. a strange man, whom she later identified as the defendant, was walking down the street. He stopped and asked her for a match. Though it was dark, she could see his face because of a street lamp located in front of the building. While ascending the porch steps, this man asked her name and her astrological sign. He said he was a Leo. He maneuvered

himself behind Ms. Wadley and placed a razor on the right side of her neck. Maintaining his position behind her, he forced her to walk behind the house, across the street and into a school yard. There in an alley he compelled her to turn over all her money, two dollars, and then raped her.

Later, while returning to the street, she broke away and a passerby in an automobile stopped and assisted her to a telephone. The police arrived. Ms. Wadley was taken to the Presbyterian Hospital in Newark, examined and treated. According to the hospital report she had "contusions at the right side of [her] neck," was "very nervous" and had a tampon "pushed up inside [her] vagina."

Detective Wright of the Newark Police obtained a description of the incident. A suspect was brought to the hospital, but Ms. Wadley asserted he was not her attacker. Detective Wright showed her many photographs at police headquarters but she was unable to identify her assailant among them.

About a month later in June 1976, Ms. Wadley, while in the company of Bobby Caldwell, saw the defendant and said she recognized him as her assailant. Caldwell was acquainted with him, but did not know his name. She telephoned Detective Wright, but was told he was on vacation, a fact which he denied at the trial. Several months later, she saw the defendant in a bar. When the defendant left, she asked the bartender if he knew him and where he lived. The bartender indicated the apartment house in which defendant resided.

On April 14, 1977, accompanied by a friend, she conducted a surveillance of the premises and identified defendant's precise location. The police, who were then called, came and arrested defendant. On May 6, 1977, Ms. Wadley gave Detective Wright another description of the defendant.

Defendant, who had no prior record, was 23 years old and employed at the time. He vehemently denied the entire incident and claimed that he had been living with a woman for about seven years. He admitted he was born on a date in

August that put him under the astrological sign Leo. He used a box cutter razor in his job, lived in the neighborhood, and walked by the South 10th Street address daily.

Ms. Wadley had originally described her assailant as being slightly over 5'3" tall, weighing about 130 to 140 pounds and having a medium size Afro hair style. It was not until her statement on May 6, 1977 that she said that her assailant had a broken tooth. In fact, defendant was 5'9" tall and weighed 165 pounds. He did have a broken tooth.

The trial court generally charged the jury on its fact finding responsibility, the elements of each of the crimes and the State's burden of proof. Defendant objected to the charge, requesting the court to instruct "the jury with standards as to identification since identification is very much at issue in this case." The court refused to charge on identification. The jury interrupted its deliberations to request a reading of Ms. Wadley's testimony describing her assailant. It deliberated from 11:25 a. m. to 8:00 p. m., and continued its consideration the next day, returning a verdict of guilty on all counts at 4:00 p. m.

We granted defendant's petition for certification primarily to consider the propriety of the trial court's refusal to instruct the jury with respect to identification.

## I

Appropriate and proper charges to a jury are essential for a fair trial. See *Gabriel v. Auf Der Heide-Aragona, Inc.*, 14 *N.J.Super.* 558, 563–564 (App.Div.1951). It is at this point in the trial before the jury retires to deliberate and resolve the factual issues that the trial court should explain to the jury in an understandable fashion its function in relation to the legal issues involved. *Jurman v. Samuel Braen, Inc.*, 47 *N.J.* 586, 591–592 (1966) ("court's instructions must . . . correctly state the applicable law in understandable language"). Entailed is a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the

jury may find. Most laypersons are uneducated in the law and do not understand lawyers' jargon or the nuances involved in many of the concepts with which they are called upon to deal in the jury room. F. Rodell, *Woe Unto You Lawyers*, 125 (2d ed. 1957). A jury may not even have the luxury of the availability of a dictionary during its deliberations. *Palestroni v. Jacobs*, 10 *N.J.Super.* 266 (App.Div.1950). Thus faithful performance of the court's duty of expounding the law for the jury's guidance and instruction requires a plain and clear exposition of the issues.

▌ The trial court's instructions should cover all essentials and counsel may justifiably assume that fundamental matters will be covered in the charge. In *State v. Butler*, 27 *N.J.* 560 (1958), a felony murder conviction was reversed for failure to define the underlying felony, robbery, no request to charge having been submitted but defendant having objected to the charge. Justice Francis, writing for the Court, stated:

To fail to define the offense attributed to the accused and the essential elements which constitute it, is to assume that jurors are educated in the law—an assumption which no one would undertake to justify. On the contrary, the appearance of a person with legal training on the jury panel would be a rarity. The criminal law cannot be administered justly or efficiently if the jury is allowed to speculate as to what conduct the law intended to proscribe by a specified crime. Accordingly, we hold the view that a mandatory duty exists on the part of the trial judge to instruct the jury as to the fundamental principles of law which control the case. Among such principles is the definition of a crime, the commission of which is basic to the prosecution against the defendant. And the duty is not affected by the failure of a party to request that it be discharged. Whether, in the absence of objection, such failure constitutes plain error, would depend upon the circumstances of the particular case.

. . . .

An accused is entitled to assume that the elemental principles governing the accusation against him will be covered in the charge of the court. But when that course is not pursued and an oral request to do so is submitted, it cannot be ignored. The right to the instruction is absolute. [*Id.* at 595–596]

See *State v. Powell*, 84 *N.J.* 305, 318 (1980), where we held in a trial on an indictment for first degree murder that a trial court has a duty to charge second degree murder when the evidence tends to support it regardless of requests. See also *State v.*

*Lucas,* 30 *N.J.* 37, 75–76 (1959) (trial court should have charged specific elements of arson); *State v. Romero,* 95 *N.J.Super.* 482, 488–489 (App.Div.1967) (trial court should have instructed jury as to the difference between grand and petit larceny).

In *Kreis v. Owens,* 38 *N.J.Super.* 148 (App.Div. 1955), a negligence personal injury case in which the cause of the accident was a crucial issue, the trial court made only two passing references to proximate cause. No request had been submitted though defense counsel objected to the court's failure to charge proximate cause. Justice (then Judge) Francis, in reversing the trial court because of that failure, wrote:

> The factual setting of the case made the problem of causation of great importance; an importance which, in our opinion, could not be met by simply using the term "proximate cause" without adequately defining it and without explaining the definition in relation to the facts. Counsel was justified in assuming that so fundamental a matter would be covered in the charge and therefore cannot be considered so derelict in the performance of his own function to furnish requests to charge as to bar relief. [*Id.* at 155]

This requirement of a charge on a fundamental matter is more critical in a criminal case when a person's liberty is at stake. Objections to charges that are deficient in essentials will preserve these issues on appeal and will ordinarily result in a reversal. In the absence of an objection the issue would be governed by the plain error rule. *R.* 2:10–2. See, *e. g., Vespe v. DiMarco,* 43 *N.J.* 430, 435–436 (1964).

## II

The function of a request to charge is to draw from the court a declaration of the law, coupled with an instruction to the jury on how it is to be applied by them in reaching a conclusion upon the issues before them. *Hoffman v. Trenton Times,* 125 *N.J.L.* 450 (E. & A. 1940). Requests for jury instructions may be classified into three levels of importance: (1) those concerning essential and fundamental issues; (2) those concerning substantially material matters; and (3) all other relevant and material subjects.

■ The court should instruct the jury with respect to requests involving essential and fundamental issues and those dealing with substantially material points. See *Wild v. Roman,* 91 *N.J.Super.* 410, 413–414 (App.Div.1966). Requests for instructions regarding such matters should be honored. As we stated in *State v. Spruill,* 16 *N.J.* 73, 81 (1954):

> Generally, the judge is bound to comply with requests for instructions that correctly state the controlling legal principles in relation to the evidence, and concern the material issues and points of the case.

When the subject matter of the request does not fall within the first two categories, essential or substantially material issues, then the trial court may exercise broad discretion on whether to grant the request. Guidelines of relevancy and materiality should be observed in exercising that discretion.

■ Requests should be structured in accordance with certain well established guidelines. The request must concern legal and factual issues that have been properly raised in the proceedings. *Peter W. Kero, Inc. v. Terminal Construction Corp.,* 6 *N.J.* 361, 372–373 (1951). Every request must state the correct principle of applicable law in a manner that is tailored to the facts of the case and is not misleading. *State v. Blecker,* 155 *N.J.Super.* 93, 101–102 (App.Div.1978). Requests simply stating an abstract principle of law are insufficient. *Altieri v. Public Service Railway Co.,* 103 *N.J.L.* 351, 353 (E. & A. 1927). A request should not be overly broad or vague. *State v. Clawans,* 38 *N.J.* 162, 174–175 (1962); *Mijon v. Acquaire,* 51 *N.J.Super.* 426, 446 (App.Div.1958), certif. den. 28 *N.J.* 146 (1958). Nor may it contain a partially erroneous statement of law. *State v. Blecker,* 155 *N.J.Super.* at 102.

■ The court, of course, is not bound to utilize the language of the request and none need be honored if the matter has otherwise been covered in the charge. *State v. Thompson,* 59 *N.J.* 396, 411 (1971). Frequently a request will be framed in language favorable to the proponent's position. However, the court must be certain that its instructions are presented in terms that are fair and impartial.

The rules governing whether the requests for charge are proper have been summarized as follows:

> It is not incumbent upon the trial court to give any requested instruction which is an erroneous statement of the law or is otherwise improper under the facts of the case or does not state the law with substantial correctness. The trial court may properly refuse a requested charge which is unintelligible or incomplete, or which might prove misleading or confusing to the jury; a requested instruction requiring the jury to decide questions of law; a requested instruction in conflict with instructions given; a requested instruction which has no evidence to support it; an instruction which is too general or too broad or omits some qualification or limitation necessary to make it properly applicable to the facts of the case; or a request not broad enough to cover the whole law of the case on the point. [75 *Am.Jur.2d*, *Trial*, § 590 at 571–572]

Failure to honor proper requests will ordinarily be deemed prejudicial error when the subject matter is fundamental and essential or is substantially material to the trial. In any other situation the objecting party must establish an abuse of discretion.

### III

A key issue in this case was identification. It was the major, if not the sole, thrust of the defense, defendant's claim being that the complaining witness Wadley had incorrectly identified him as the assailant. Defendant stressed the facts that the incident had occurred at night when it was dark and that the attacker had remained behind her as they walked to the place where the rape occurred. The State produced no evidence that there was any light at this location. Defendant emphasized that Ms. Wadley's original description was of a man who was five inches shorter and thirty pounds lighter than he. Defendant also sought to raise the inference that Ms. Wadley's identification was uncertain because she did not refer to his chipped tooth until May 6, 1977, approximately 12 months after the incident.

The absence of any eyewitness other than Ms. Wadley directly connecting defendant to the crime, the discrepancies in the description, and defendant's denial combined to make identification a fundamental and essential trial issue. The potential danger of mistaken eyewitness identification is particularly significant here. See *State in Interest of W.C.*, 85 *N.J.* 218, 224–225 (1981). Despite the crucial nature of this issue, the

charge as given did not specifically cover identification. Reference was made generally to credibility. One passing comment in jury instructions covering 20 pages of the trial transcript referred to the proof of defendant's participation. When viewed in the context of the charge as a whole, this passing comment on the vital issue in the case was inadequate and tended at least to submerge the crucial issue of identification. Though the jury decided the identification question, the defendant had a right to expect that the appropriate guidelines would be given, focusing the jury's attention on how to analyze and consider the factual issues with regard to the trustworthiness of Ms. Wadley's in-court identification. Furthermore, the trial court repeatedly referred to defendant by name, implying that defendant was in fact the man who approached Wadley on the night of the crime. Under all these circumstances, the defendant, having brought the matter to the attention of the court by objecting to the charge, was entitled to an identification instruction even though he had not submitted a formal request.

When confronted with comparable situations, other jurisdictions have reached a similar result. In *Commonwealth v. Bowden*, 399 N.E.2d 482, 489–490 (Mass.1980), a murder conviction was reversed when the trial court gave the jury detailed instructions on how to "decide whom you believe" without mentioning the possibility of mistaken identification. Though the defendant had submitted an improper request, the Massachusetts Supreme Judicial Court held the identification issue had been fairly raised and the defendant was entitled to such an instruction.

In *People v. Best*, 73 *App.Div.*2d 651, 422 *N.Y.S.*2d 478, 479 (1979), the accuracy of the victim's identification in a rape case was a key issue. The court reversed a conviction because the trial court refused to make any reference to identification in its instructions. *Cf. United States v. Hodges*, 515 *F.*2d 650 (7 Cir. 1975) (refusal to give jury instruction on identification held reversible error where identification was a crucial issue, and defense counsel had submitted a request to charge); *United States v. Holley*, 502 *F.*2d 273, 276 (4 Cir. 1974) (failure to

instruct jury on possibility of misidentification held reversible error where identification testimony was so lacking in positiveness as to strongly suggest the likelihood of irreparable misidentification); *Salley v. United States*, 353 *F.*2d 897 (D.C.1965) (refusal to give requested charge that jury must acquit if it finds a reasonable doubt as to identification of defendant held reversible error where major defense was mistaken identity).

■ Defendant's objection seeking instructions on identification would have been satisfied here if the court had specifically charged the jury that it was the State's burden to prove beyond a reasonable doubt that it was defendant who had raped Ms. Wadley, that it was not defendant's burden to prove that he was elsewhere when the offense occurred, and that the State's case depended on the eyewitness identification by Ms. Wadley, setting forth the respective factual contentions relative to her descriptions. It also could have used as a guide the Model Jury Charge which reads as follows:

> The defendant as part of his general denial of guilt contends that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that he is the person who committed the alleged offense. Where the identity of the person who committed the crime is in issue the burden of proving that identity is upon the State. The State must prove beyond a reasonable doubt that this defendant is the person who committed the crime. The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else or to prove the identity of that other person. You must determine, therefore, not only whether the State has proved each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proved beyond a reasonable doubt that this defendant is the person who committed it.

> In order to meet its burden with respect to the identification of the culprit the State has presented the testimony of the witness [name]. You will recall that this witness identified the defendant in court as the person who committed the offense. According to the witness, his identification of the defendant in court is based upon the observations and perceptions which he made of the defendant on the scene at the time the offense was being committed. It is your function as jurors to determine what weight, if any, to give to this testimony. You must decide whether it is sufficient reliable evidence upon which to conclude that this defendant is the person who committed the offense charged.

> In going about your task you should consider the testimony of the witness in the light of the customary criteria concerning credibility as I have explained them to you. It is particularly appropriate that you consider the capacity or the ability of the witness to make observations or perceptions as you gauge it to be and that you consider the opportunity which the witness had at the time and under all of the attendant circumstances for seeing that which he says he saw or

that which he says he perceived with regard to his identification of the person who committed the alleged offense.

(Here consider briefly reviewing the conflicting contentions of the State and the defendants relating to the above)

Unless the in-court identification results from the observations or perceptions of the defendant by the witness during the commission of the crime rather than being the product of an impression gained at the out-of-court identification procedure it should be afforded no weight. Thus the ultimate issue of the trustworthiness of an in-court identification is for you to decide.

If, after a consideration of all of the evidence, you have a reasonable doubt as to the identity of the defendant as the person present at the time and place of the crime you must acquit him. If, however, after a consideration of all of the evidence you are convinced beyond a reasonable doubt of his presence at the scene you will then consider whether the State has proved each and every element of the offense charged beyond a reasonable doubt. [*Model Jury Charges, Identification*, No. 4.180 at 138–8 (N.J.S.B.A.1977)]

The judgment of conviction is reversed and the matter remanded for a new trial.

SULLIVAN, J., dissenting.

The majority, in reversing the judgment of conviction herein, bases its ruling on the alleged refusal of the trial court to instruct the jury with respect to identification. Implicit in the ruling seems to be the concept that somehow the jury may have returned a verdict of guilty without being satisfied beyond a reasonable doubt that defendant was the man who raped and robbed the victim.

Defendant was convicted of rape and robbery while armed. At trial, the victim positively identified him as her assailant. Corroborative evidence supportive of the identification was presented. Defendant took the witness stand to deny knowledge of or participation in the crime. The thrust of the defense was that the victim had made a mistaken identification. The only issue in the case was whether defendant was the man involved in the criminal episode.

The trial court charged the jury that defendant was entitled to a presumption of innocence which remained with him throughout the trial; that the State had the burden of proving defendant's guilt beyond a reasonable doubt and that defendant had no burden of proof and did not have to prove his innocence.

It added that the jury was to give due regard to the credibility of the State's witnesses in determining whether or not the State had proved its case. In that regard, the court mentioned the factors the jury should take into account, including a witness's ability to observe and recollect. The jury was also told that it could find defendant guilty on the testimony of the victim alone, "if you believe her and if you are satisfied that the elements of the crime *and that Mr. Green's participation in it have been established beyond a reasonable doubt.*" (Emphasis added). While not a textbook charge on identification, I believe it was adequate to present the critical issue to the jury fairly.

The majority opinion suggests that the trial court could have used as a guide the Model Jury Charge on identification. I do not disagree with this comment but must point out that in a note accompanying the Model Charge the Supreme Court Committee which drafted the charge states in part:

> Whether or not a separate charge on the subject of identification is necessary depends upon the situation presented in an individual case. The Committee recognizes that in a simple case the issue may be submitted to the jury wholly within the framework of a charge on credibility generally.

I would not put the rape victim through the ordeal of another trial. I would affirm.

*For reversal and remandment*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*For affirmance*—Justice SULLIVAN—1.