812 A.2d 1122 (2003)
356 N.J. Super. 377
STATE of New Jersey, Plaintiff-Respondent,
v.
Jerome AMBROSELLI, Defendant-Appellant.
No. A-6013-00T4.
Superior Court of New Jersey, Appellate Division.
Submitted November 19, 2002.
Decided January 3, 2003.
Yvonne Smith Segars, Public Defender, attorney for appellant (Sylvia Orenstein, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Linda K. Danielson, Deputy Attorney General, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
*1123 Before Judges PRESSLER, CIANCIA and AXELRAD.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
Tried to a jury, defendant Jerome Ambroselli was convicted of fourth-degree aggravated assault on a police officer, N.J.S.A. 2C:12-1b(5)(a), and fourth-degree [1] resisting arrest, N.J.S.A. 2C:29-2a.[2] Defendant was sentenced for aggravated assault to a custodial term of eighteen months with a nine-month parole disqualifier, and for resisting arrest to a concurrent term of eighteen months. Defendant's sentence was ordered to be served consecutively to another sentence he was serving.
Subsequent to filing his appeal, defendant refiled in the trial court his motion to dismiss the charges, asserting the complaints were not executed in the presence of a judicial officer. He contended this issue was not properly disposed of by the trial court. Without objection from the State, we granted the motion for a limited remand for determination of this issue by the trial court. The trial court re-affirmed its previous denial of defendant's motion because "an individual by the name of Patty Lamb designated as the Special Deputy Court Administrator (SDCA) had executed the warrants and that this was consistent, in the courts view, with Rule 3:3-1(a)."
Through counsel, defendant asserts the following claims on appeal:
POINT I
[A] BECAUSE THE COMPLAINT-WARRANT IN THIS CASE WAS IMPROPERLY EXECUTED, IT MUST BE DISMISSED.
[B] THE TRIAL COURT'S OPINION ON LIMITED REMAND IGNORED THE PRIMARY BASIS OF THE DEFENDANT'S CHALLENGE TO THE VALIDITY OF THE COMPLAINT-WARRANTS; FURTHER FACT-FINDING IS NECESSARY TO RESOLVE THE ISSUE.
POINT TWO
THE TRIAL COURT'S GRATUITOUS INTERPOLATIONS ON THE KEY ISSUE OF THE REQUISITE MENTAL STATE FOR CONVICTION OF AN ATTEMPT TO CAUSE BODILY INJURY DILUTED THE INSTRUCTION AND HAD THE CAPACITY TO CONFUSE AND MISLEAD THE JURY, THUS DEPRIVING DEFENDANT OF DUE PROCESS AND A FAIR TRIAL. (Not Raised Below).
POINT THREE
THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT IT SHOULD CONSIDER WITH CAUTION TESTIMONY OF AN OUT-OF-COURT STATEMENT PURPORTEDLY MADE BY THE DEFENDANT WAS PLAIN ERROR REQUIRING REVERSAL. (Not Raised Below).
POINT FOUR
THE SENTENCE IMPOSED ON THE DEFENDANT WAS EXCESSIVE; MOREOVER, A PERIOD OF PAROLE INELIGIBILITY WAS UNWARRANTED IN THIS CASE.
*1124 In a pro se brief supplemental brief, defendant further claims:

N.J.S.A. 2B:12-21(b) IS UNCONSTITUTIONAL UNDER THE "SEPARATION OF THE POWERS" DOCTRINE IN ARTICLE III, PAR. I OF THE NEW JERSEY CONSTITUTION, AND THUS WOULD WARRANT DISMISSAL OF DEFENDANT'S CRIMINAL COMPLAINT AS BEING CONSTITUTIONALLY DEFECTIVE.

I.
We find no merit in defendant's claims alleging defective complaints and challenging the constitutionality of the statute authorizing officials to act for the court, and thus affirm those aspects of the appeal. We find error, however, in the jury instruction as to the requisite mental state of "purposeful", a material element in both offenses of which defendant was convicted. Because defense counsel made no objection to the instruction at trial, the standard of review is plain error. R. 1:7-2. We conclude defendant has satisfied the plain error standard in connection with the jury instruction, Rule 2:10-2, and, therefore, reverse defendant's convictions and remand for a new trial. Accordingly, we need not address the contentions raised in Points Three and Four of defendant's brief since defendant may request the charge at retrial and if convicted, he will have to be resentenced.

II.
In response to a domestic dispute call, Officer Melissa Capanna, a uniformed member of the Gloucester Police Department, came upon defendant walking down the street in the vicinity of the house which was the subject of the call. He was wearing a ripped sweatshirt, was dazed and profusely bleeding from a deep gash in his head, and his face and neck were covered in blood. The officer summoned an ambulance and, assuming he was involved in the domestic dispute, got out of her car to speak with him. When the officer asked defendant what happened, he repeatedly responded that "it wasn't him" and kept walking. She continued to follow him, requesting that he sit down and talk, to no avail. Officer Capanna then pulled on the back of defendant's sweatshirt to get his attention. According to the officer, defendant then said "if [she] touched him he was going to f-ing kill [her]." He then turned around, swung at her, and began running away. The officer directed defendant to stop and began chasing him after calling for back-up assistance from uniformed officers.
Officer Michael Harkins and Sergeant Christopher Jones responded, received a description from Officer Capanna, and gave chase. Sergeant Jones spotted a man fitting the description running through yards and between two houses and yelled at him to stop several times, but the man kept running. As defendant ran along a fence, Sergeant Jones reached over the fence, grabbed his shoulder and pushed and spun him around, directing him not to resist. Defendant swung wildly at the officer. Fearful of being struck and of getting defendant's blood on him, Sergeant Jones sprayed defendant with pepper spray. The back-up officers then placed defendant in custody, handcuffed him, and summoned an ambulance.
Defendant was not informed by any of the officers he was going to be placed under arrest. Although the officers testified that defendant had no difficulty running, did not appear to be in shock, and seemed to understand what they and the EMT staff were saying to him, the officers also acknowledged that he had a deep laceration in his head, was moaning, had *1125 lost a great deal of blood, and seemed confused.

III.
The complaints were issued in compliance with the applicable statute and Court Rule. The complaint was signed by the special deputy court administrator of the municipal court, as authorized by N.J.S.A. 2B:12-21a and Rule 3:3-1(a). The jurat was taken by a police lieutenant who is presumptively the one in charge of police headquarters, N.J.S.A. 2B:12-21b. In these circumstances, when a complaint is prima facie in conformance with the statutory provisions and Court Rule, the burden must shift to the challenger to show it is not. There is no need for further fact-finding for the State to, in essence, prove the validity of what already appears to be valid.
Defendant's challenge to the constitutionality of N.J.S.A. 2B:12-21b is without sufficient merit to warrant further discussion. R. 2:11-3(e)(2). There is no violation of separation of powers for the court administrator and deputy administrator, as well as the police officer, to perform ministerial acts on behalf of the municipal court.

IV.
Defendant contends that both convictions must be reversed because the trial court erroneously instructed the jury as to the necessary culpability requirement of the offenses. We agree. Because defendant's mental state is a critical issue in this case and the proofs are close, this cannot be considered harmless error.
Defendant was walking down the street, dazed and profusely bleeding from a deep gash in his head, when he was stopped by Officer Capanna. When she was unsuccessful in having defendant sit down and tell her what happened, she grabbed the back of his sweatshirt to get his attention, and he responded by making a threatening comment, swinging wildly at her, and fleeing. Defendant swung his fist at Sergeant Jones a short time later when the officer chased him and seized him across a fence. For his conduct, defendant was charged in the indictment with aggravated assault by attempting to cause bodily injury to the uniformed officers acting in performance of their duties, N.J.S.A. 2C:12-1b(5)(a), and resisting arrest by purposely preventing the officers from arresting him by using or threatening to use physical force or violence against them, N.J.S.A. 2C:29-2a.
Both offenses for which defendant was convicted require the mental state of purposeful conduct, which is the highest degree of culpability under the Code. "Purposely" is defined by N.J.S.A. 2C:2-2b(1):
A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes that they exist. "With purpose," "designed," "with design" or equivalent terms have the same meaning.
A person is guilty of aggravated assault if he commits a simple assault upon "any law enforcement officer acting in the performance of his duties while in uniform." N.J.S.A. 2C:12-1b(5)(a). Simple assault as charged in this case is defined by N.J.S.A. 2C:12-1a(1) as "attempt[ing] to cause ... bodily injury to another." Attempt expressly requires the culpability requirement of "purposeful", N.J.S.A. 2C:5-1a(2)[3], *1126 i.e., in this case, that defendant acted with a purpose to cause bodily injury to one or more of the officers. In other words, the State was required to prove beyond a reasonable doubt that it was defendant's conscious object to cause bodily injury to an officer. N.J.S.A. 2C:2-2b(1).
At the time of this offense, a person was guilty of fourth-degree resisting arrest "if he purposely prevent[ed] a law enforcement officer from effecting a lawful arrest,... [and] [used] or threaten[ed] to use physical force or violence against the law enforcement officer...." N.J.S.A. 2C:29-2a(1).[4] Thus the State must prove beyond a reasonable doubt that it was defendant's conscious object to prevent his arrest. N.J.S.A. 2C:2-2b(1).
In instructing the jury on the elements of the aggravated assault charge, the trial judge correctly advised the jury that to find the defendant guilty, it must determine beyond a reasonable doubt that he had the purpose to cause bodily injury to a police officer. The judge defined "purposeful conduct" consistent with the statutory definition:
Now, a person acts purposely with respect to the nature of his conduct or result thereof if it's a person[`s] conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to [attendant] circumstances if a person is aware of the existence of such circumstances or a person believes or hopes that they exist. One can be deemed to be acting purposely if he acts with design or with the purpose, with the particular object if one really means to do what he does. That's probably the best. Did you act purposely? Do you mean to do what you do?
However, the judge then added his own gloss on the definition: "And [once] again, this is not written in the law but you can consider the definition of purposeful and maybe the contrary definition of by accident."
In instructing the jurors on the elements of resisting arrest, the trial court defined "purposely" as follows:
A person acts purposely, we're going to tell you that word again because remember the defendant would have to act purposely and the State would have to prove that beyond a reasonable doubt. A person acts purposely with respect to the nature of his conduct, the result of his conduct if it is his conscious object to engage in conduct of that nature to cause such a result. That is, a person acts purposely if he means to act in a certain way or to cause a certain result.
Defense counsel did not object to these instructions.
The State contends that, in the context of the charge as a whole, State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973), the jury was properly instructed on several occasions as to the "purposeful" element of *1127 the offenses. Thus, according to the State, the trial court's one sentence contrast of "purposeful" to "accidental" did not have the capacity to confuse or mislead the jury, and therefore, did not constitute plain error.
We reject the State's contention. The charge on the requisite mental state was fatally flawed because it provided a misleading explanation of a material element of the crimes. By contrasting "purposeful conduct" to "accidental conduct" without defining any of the levels of culpability in between, the trial judge diluted the culpability requirement necessary to establish the purposeful element of both aggravated assault and resisting arrest.
Under some circumstances it is helpful for a court instructing a jury to inform it of other mental states as a comparison and to clarify the distinctions by illustrative examples. State v. Concepcion, 111 N.J. 373, 381, 545 A.2d 119 (1988). This technique may assist the jury in its fact-finding function and enhance the jurors' understanding of the requisite mental state necessary for conviction of an offense. Ibid. However, in doing so, the court must clearly define the other culpability requirements in accordance with the Code and carefully inform the jury that these other mental states are presented only for comparison purposes and should not be considered as an element of the offenses in the case before it. Ibid.
"Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287, 430 A.2d 914 (1981). Incorrect instructions of law are poor candidates for rehabilitation under a harmless error analysis. State v. Rhett, 127 N.J. 3, 7, 601 A.2d 689 (1992); State v. Weeks, 107 N.J. 396, 410, 526 A.2d 1077 (1987). A proper explanation of the elements of a crime is especially crucial to the satisfaction of a criminal defendant's due process rights. State v. Burgess, 154 N.J. 181, 185, 712 A.2d 631 (1998); State v. Martin, 119 N.J. 2, 15-17, 573 A.2d 1359 (1990). Our Supreme Court has found reversible error in the charge by the court's failure, whether or not requested, to instruct fully, clearly and accurately as to the fundamental and essential issues before the jury, including each of the elements of the offense and the standard of culpability. State v. Concepcion, supra, 111 N.J. at 381, 545 A.2d 119; State v. Green, supra, 86 N.J. at 290, 430 A.2d 914.
The manner in which the trial court utilized a comparison technique in this case, however, had the clear capacity to mislead the jury and produce an unjust result. R. 2:10-2; State v. Williams, 168 N.J. 323, 336, 774 A.2d 457 (2001); State v. Hock, 54 N.J. 526, 538, 257 A.2d 699, (1969) cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970). The court's explanatory contrast had the capacity to inform the jury that the only mental culpability choices were "purposeful" or "accidental." This is clearly a misstatement of the law. Between "purposeful conduct" and "accidental conduct" the Criminal Code recognizes no less than three intermediate levels of culpability: knowing, N.J.S.A. 2C:2-2b(2); reckless[5], N.J.S.A. 2C:2-2b(3); and negligent, N.J.S.A. 2C:2-2b(4).
For a person to act knowingly with respect to the nature of his conduct or the attendant circumstances, he must be aware of the nature of his conduct or the presence of such circumstances or of a high probability they are present. N.J.S.A. 2C:2-2b(2). To act knowingly with respect *1128 to a result of his conduct, a person must be aware that his conduct is practically certain to cause such a result. Ibid. For a person to act recklessly, he must act in a gross deviation from the standard of conduct of a reasonable person in the actor's situation, in conscious disregard of a substantial and unjustifiable risk that a material element exists or will result from his conduct. N.J.S.A. 2C:2-2b(3). For a person to act negligently, he must act in a gross deviation from the standard of conduct of a reasonable person in the actor's situation, by failing to perceive a substantial and unjustifiable risk, considering the nature and purpose of his conduct and the circumstances known to him, that a material element exists or will result from his conduct. N.J.S.A. 2C:2-2b(4).
Even though the trial court defined purposeful conduct for both offenses in accordance with the Code, its contrast of "purposeful" to "accidental" had the potential for confusion. This statement could have been construed by a reasonable jury to suggest that it could convict defendant based upon a culpability state below purposeful. The jury could have been left with the impression that if defendant's conduct was anything more egregious than accidental it fell within the ambit of purposeful. The trial court's error is particularly problematic in this case because there was evidence defendant was injured and not in full command of his faculties, and may not have understood what was going on when he was approached by the officers. Further, the officers did not announce that defendant was being placed under arrest.
In defendant's debilitated condition, the jury may have found that his conduct rose above the "accidental" level, but only to negligent, reckless or knowing. But the jury was not informed of these intermediate culpability states. Thus, the jurors could have, for example, concluded that defendant's conduct was reckless as defined by the Code, being a conscious disregard of a known risk, rather than purposeful. Reckless conduct, which is not accidental because it involves some degree of conscious action, however, is a lower level of culpability than that required for conviction of aggravated assault and resisting arrest. This is a substantial denial of defendant's constitutional rights which mandates reversal of the convictions.
The judgment of conviction entered upon the jury verdict is reversed. The matter is remanded for a new trial.
NOTES
[1] By L. 2000, c. l8, § 2, effective April 28, 2000, this offense was upgraded from fourth degree to third degree.
[2] Defendant was also charged with fourth-degree criminal mischief, N.J.S.A. 2C:17-3a(1), and two disorderly persons offenses, simple assault, N.J.S.A. 2C:12-la, and criminal mischief, N.J.S.A. 2C:17-3a, which were not part of the subject trial and are not part of the appeal.
[3] N.J.S.A. 2C:5-1(a)(2) provides:

A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
(2) When causing a particular result is an element of the crime, does ... anything with the purpose of causing such result without further conduct on his part[.]
[4] The current statute, N.J.S.A. 2C:29-2a, as amended by L. 2000, c. l8, § 2, effective April 28, 2000, provides as follows:

(1) Except as provided in paragraph (3), a person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest.... (3) An offense under paragraphs (1) or (2) of subsection a. is a crime of the third degree if the person:
(a) Uses or threatens to use physical force or violence against the law enforcement officer ...
[5] The Code recognizes an enhanced reckless culpability state, i.e., reckless under circumstances manifesting extreme indifference to human life. See, e.g., N.J.S.A. 2C:11-4a; N.J.S.A. 2C:12-1b(1), (7).