**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5489-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

QUADIR M. ARMSTRONG, a/k/a
QUADIR J. ARMSTRONG,

    Defendant-Appellant.

_____

Submitted December 19, 2018 – Decided February 26, 2019

Before Judges Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-01-0069.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Deputy Public Defender II, of counsel and on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (James C. Brady, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Quadir M. Armstrong appeals from his conviction of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b). After reviewing the record in light of the contentions advanced on appeal, we affirm.

The following facts were adduced at trial. At 4:06 a.m., Elizabeth police officers responded to the residence of defendant's girlfriend, Natera Howard, following a report of fired gunshots. Upon arrival, Howard informed officers "[t]hey were shooting in here," and she advised defendant was upstairs. The officers searched the first floor and found no signs of forced entry. While proceeding up the stairway to the second floor, officers observed bullet holes in the wall. They found defendant sitting on a mattress, in a bedroom, under a broken window. The officers smelled gunpowder, observed "several spent shell casings" next to defendant, and a laundry bag within defendant's reach.

Officers then ordered defendant to raise his hands and kicked over the laundry bag, "fearing that there could be a weapon concealed directly within arm's reach." A loaded firearm fell out of the laundry bag. Defendant told officers he heard a loud crash from the back of the house and heard the breaking of a window. Fearful for his life, defendant fired two shots into the hallway and three shots out the window at a fleeing white SUV.

A-5489-16T2

Defendant and Howard were arrested and transported to the police station. At the station, defendant gave a video-recorded statement, disclosing he found the gun in the street three days earlier. Although defendant repeated he had shot the gun through the bedroom window, he conceded there was no white SUV. He stated Howard had nothing to do with the shooting and she was not aware defendant possessed a gun.

Defendant was charged in an indictment with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b). Prior to trial, defendant stipulated he was a certain person who could not lawfully possess a handgun as the result of a prior criminal conviction.

At trial, defendant testified that the gun belonged to Howard. When the couple thought someone was breaking into the home, Howard handed defendant the gun. Defendant fired several rounds to scare any potential intruder and then dropped the gun into the laundry bag beside the bed. Defendant conceded he broke the screen on the bedroom window in order to fire the gun out the window. Defendant explained he told officers the gun was his "[s]o they could release [Howard]" because she had children.

At the conclusion of counsels' summations, the trial judge inquired of both attorneys whether the jury charge was "satisfactory"; both responded yes. The

3

judge instructed the jury that in order to convict defendant, the State must prove beyond a reasonable doubt: 1) there was a firearm; 2) defendant knowingly "purchased, owned, possessed or controlled" the firearm; and 3) defendant was "prohibited from possessing a [firearm] due to a prior conviction."

The trial court then explained each of the three elements in further detail. In explaining element two, the judge stated:

> To possess an item under the law, one must have a knowing intentional control of that item accompanied by a knowledge of its character. So, a person who possesses a firearm must know or be aware that he possesses it, and he must know what it is that he possesses or controls.
>
> Possession cannot merely be a passing control, fleeting, or uncertain in its nature. In other words, to possess within the meaning of the law, the defendant must knowingly procure or receive the item possessed or be aware of his control thereof for a sufficient period of time to have been able to relinquish his control if he chose to do so.

Defendant did not object to the jury charge.

During deliberations, the jury asked the trial court to clarify the meaning of "passing control, fleeting." The judge proposed to counsel the following answer to the jury's question. He stated:

> [T]here is no hard and fast definition of passing control, fleeting, or uncertain in its nature. It is up to you, in conformity with the jury instructions I gave, as well

4

your common sense, to determine if Mr. Armstrong owned, possessed, or controlled [the gun] based upon the evidence in this case.

Both counsel found the proposed response to the jury's question acceptable. The trial court then repeated to the jury, verbatim, the answer discussed with counsel. The judge also invited the jury to advise if it needed further clarification.

Defendant was found guilty of the charge and sentenced to seven years of imprisonment subject to five years of parole ineligibility as mandated under the Graves Act, N.J.S.A. 2C:43-6(c).

Defendant presents the following issue on appeal:

WHERE THE JURY SIGNALED ITS CONFUSION ABOUT FLEETING POSSESSION, WHICH WAS THE ONLY CONTESTED ISSUE IN THE CASE, THE TRIAL COURT'S FAILURE TO PROVIDE THE JURY WITH ANY ADDITIONAL GUIDANCE DEPRIVED DEFENDANT OF A FAIR TRIAL AND REQUIRES REVERSAL OF THE CONVICTION.

Defendant asserts the "court's mere reference to its prior instruction" on the issue of fleeting possession was "woefully deficient." Because defendant did not object to the jury charge, we review the instruction for plain error and will only reverse if that error was "clearly capable of producing an unjust result." State v. McKinney, 223 N.J. 475, 494 (2015) (quoting R. 2:10-2). An unjust result arises when the error raises a "reasonable doubt as to whether the error

5

led the jury to a result it otherwise might not have reached." State v. Taffaro, 195 N.J. 442, 454 (2008) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). Failure to object creates a "presum[ption] that the instructions were adequate." State v. Morais, 359 N.J. Super. 123, 134–35 (App. Div. 2003).It is undisputed that "[a]ppropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). "Entailed is a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 287–88.

When reviewing an alleged error in the jury charge, "portions of a charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect." State v. Wilbely, 63 N.J. 420, 422 (1973). Thus, in "assessing the soundness of a jury instruction," we consider how ordinary jurors would understand the instructions as a whole, based upon the evidence before them. State v. Savage, 172 N.J. 374, 387 (2002). Additionally, the effect of any error must be considered "in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

With these principles in mind, we find the trial court's instructions provided the jury with a "comprehensible explanation" of fleeting and passing

6

possession.  <u>Green</u>, 86 N.J. at 287.  The judge read the model jury charge to the jury and defense counsel accepted the proposed charge.  <u>See</u> <u>Model Jury Charges (Criminal)</u>, "Certain Persons Not to Have Any Firearms (N.J.S.A. 2C:39-7(b)(1))" (rev. Feb. 12, 2018); <u>see also</u> <u>State v. R.B.</u>, 183 N.J. 308, 325 (2005) (instructing trial courts to follow the model jury charges and read them "in their entirety to the jury").

Furthermore, the instructions provided the jury with the proper discussion of the concepts under the pertinent case law.  <u>See</u> <u>State v. McMenamin</u>, 133 N.J. Super. 521, 524 (App. Div. 1975) ("A person who holds an object belonging to another just long enough to discover its character and promptly divests himself of further control over it would not be guilty of possession.").

We also consider any alleged error in the context of the strength of the State's case.  <u>See</u> <u>Walker</u>, 203 N.J. at 90.  In a taped statement to officers, defendant disclosed he found the firearm three days prior to the incident. Although at trial defendant testified the firearm belonged to Howard, defendant admitted he discharged five bullets from the gun before putting into the laundry bag.  There was sufficient evidence presented to the jury to determine whether defendant possessed the gun "for a sufficient period of time to have been able to relinquish his control if he chose to do so."

After the jury requested clarification of "passing control, fleeting" the judge proposed a response to the question. Defense counsel agreed with the proposed response. The jury had no further questions. We are satisfied defendant has not demonstrated plain error capable of producing an unjust result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5489-16T2