**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5413-16T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DEVIN ALEXANDER, a/k/a
DEIN L. ALEXANDER, and
DEVFIN L. ALEXANDER,

      Defendant-Appellant.

_____

Submitted September 10, 2019 – Decided October 7, 2019

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 15-09-0463.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Paul H. Heinzel, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Devin Alexander appeals from his convictions following a jury trial for aggravated assault, unlawful possession of a handgun, and possession of a handgun for an unlawful purpose. Based on our review of the record in light of the applicable law, we affirm.

I.

Defendant was charged in an indictment with first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count four); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five). The indictment also charged co-defendant Avery Gorman with first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1) (count two); and third-degree hindering defendant's apprehension, N.J.S.A. 2C:29-3(a)(2) (count three). Gorman resolved the charges by pleading guilty pursuant to a negotiated plea agreement. Defendant proceeded to trial.

In relevant part, the evidence at trial showed that on August 1, 2015, Andre Johnson sat in his vehicle in front of his ex-girlfriend's sister's Franklin Township home when he saw a new, blue Honda with tinted windows circle the block twice. When the Honda passed Johnson's vehicle the second time, the

A-5413-16T1

front passenger window was down and Johnson saw defendant in the passenger seat. Johnson recognized defendant because they attended middle and high school together, and defendant had stayed at Johnson's home during the summer of 2012. In addition, ten months earlier, Johnson had been the victim of a crime committed by defendant that Johnson reported to the police, and defendant was convicted of the crime.

As the Honda passed Johnson's vehicle, he saw defendant point a handgun at him and fire four or five shots. Johnson ducked, but his vehicle was struck by bullets and the driver's-side and passenger-side front windows shattered. Johnson suffered lacerations to his head and face from the shattered glass but was not struck by any bullets. Johnson drove his vehicle first in the direction in which the Honda traveled, but then made a series of turns and returned a short time later to the scene of the shooting where he picked up his ex-girlfriend and drove to her grandmother's home.

Avery Gorman owned the Honda from which the shots were fired. On August 1, 2015, defendant requested that Gorman pick up him at work. Gorman picked up defendant and Denzel Dowdell, and later the three men were driving in Franklin Township when defendant, who was seated in the front passenger seat, said, "that was [Johnson], that was [Johnson]," referring to Johnson's

parked car. Gorman also recognized Johnson's car because he and Johnson "were friends." Defendant said he wanted to speak with Johnson, so Gorman drove around the block and again approached Johnson's parked vehicle.

According to Gorman, as the Honda proceeded toward Johnson's vehicle, defendant's front passenger-side window was down. Gorman saw defendant holding a handgun and then fire shots at Johnson. Gorman testified that he did not know defendant planned to shoot Johnson, but after the shots were fired Gorman drove the Honda away from the scene. At one point, Gorman drove down a dead end street, backed up, and turned onto another street where he passed Johnson driving his vehicle in the opposite direction.

Gorman later stopped the Honda as it approached Eugene Avenue, and told defendant and Dowdell, who was in the back seat, to exit. When the vehicle stopped, Gorman heard what he believed was a gunshot from his vehicle's backseat. Gorman saw a mother and two children standing nearby. Defendant and Dowdell exited the vehicle and ran. Gorman testified that defendant had a "long nose pistol, a revolver," in his hand as he fled behind a home on Eugene Avenue. Gorman left the area in the Honda.

Sheila Ceaser lived on Eugene Avenue with her two children and heard a gunshot shortly before she saw a blue car with tinted windows in the street. She

4

saw two men exit the car and run. One of the men, who she described as skinny, ran toward Ceaser's backyard. Ceaser saw the other man, who she described as "a little bit chunky," run while holding a "long black gun" in his hand. Ceaser called the police, who responded and observed the skinny man. The police chased the man but he avoided apprehension by fleeing into the woods behind Ceaser's home.

The police responded to Johnson's ex-girlfriend's grandmother's home, where they examined Johnson's injuries and inspected his damaged vehicle. Johnson was transported to the hospital for treatment of his lacerations. The officers observed that Johnson's vehicle had bullet holes in the front windshield, driver's-side mirror, and passenger-side rear window. The driver's-side and passenger-side front windows were shattered. Photographs showed bullet holes in the driver's-side pillar and passenger-side headrest. The police also photographed shattered glass in the road where Johnson reported the shooting occurred.

The police apprehended Gorman in his blue Honda the following day, and arrested him. A search of his vehicle's trunk revealed a bookbag containing an empty box of ammunition for a .380 caliber handgun and a box for fifty ".38 Special" rounds that contained only thirty-nine rounds.

On the same day, Lee Sciacchitano, a local restauranteur, exited his vehicle at an intersection on Eugene Avenue and saw a handgun in the grass. He picked up the gun with a towel, brought it to his place of business, and placed it in a safe. The next day, he turned the gun over to the police and showed them where he found the gun. It was later determined the gun, a .38 Special revolver, contained four spent shell casings and two live rounds of ammunition. No fingerprints were recovered from the gun.

The police recovered projectile fragments from the dashboard and under the pillar behind the driver's-side door of Johnson's vehicle. Further inspection of Gorman's Honda also revealed a hole in the roof fabric above the rear seat, an outward indentation of the vehicle's roof above the rear seat, and a projectile in the roof. The projectile was identified at trial as having been fired from a .22 caliber firearm.

Somerset County Prosecutor's Office detective Mark Matthews was qualified without objection at trial as an expert in forensic ballistics. He examined the two projectiles found in Johnson's vehicle and the .38 Special revolver recovered on Eugene Avenue. He tested the revolver and determined it was operable. He also analyzed the markings on the projectiles from Johnson's vehicle and compared them to the markings on projectiles he obtained from test-

firing the revolver. Based on his comparison of the markings, he opined that the projectiles found in Johnson's vehicle were fired from the recovered .38 Special revolver. Matthews further determined the projectile found in the roof of Gorman's vehicle was a .22 caliber round that could not have been fired from the .38 Special revolver. Matthews also analyzed Johnson's vehicle to determine the trajectory of the projectiles and concluded the vehicle was struck by at least three bullets.

The jury found defendant not guilty of attempted murder but convicted him of the lesser included offense of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), unlawful possession of a handgun, and possession of a weapon for an unlawful purpose. The court sentenced defendant to an aggregate, extended term, thirteen-year sentence subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, consecutive to the sentence defendant was then serving on convictions under three unrelated indictments. The court later adjusted the amount of jail credits it had awarded defendant, and resentenced him to an aggregate twelve-year term subject to NERA, consecutive to his sentences on the unrelated indictments. This appeal followed.

Defendant presents the following arguments for our consideration:

A-5413-16T1

POINT I

THE COURT VIOLATED DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY ADMITTING UNRELIABLE AND UNSCIENTIFIC "EXPERT" BALLISTICS TESTIMONY THAT IS CONTRARY TO FEDERAL LAW AND INADMISSIBLE UNDER N.J.R.E. 702.

A. Subjective Ballistics Toolmark Evidence Is Inadmissible Under N.J.R.E. 702 As It Is Unreliable.

B. Alternatively, This Court Should Remand The Matter For A Rule 104 Hearing As To The Scientific Reliability Of This Evidence, If Any.

POINT II

THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON IDENTIFICATION.

POINT III

THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS DENIED DEFENDANT A FAIR TRIAL.

II.

Defendant argues for the first time on appeal that the court erred by allowing Matthews's testimony that the projectiles found in Johnson's vehicle were fired from the .38 Special revolver found on Eugene Avenue. Defendant claims Matthews's analysis of the markings on the projectiles, and his comparison of the markings with those found on the projectiles from his test-

8

firing of the weapon, were not sufficiently grounded in reliable science to support his opinion that the projectiles were fired from the recovered .38 Special revolver. In support of his contention, defendant relies on newspaper articles, reports, case law, and assertions of fact that are unsupported by citation to any authority for the proposition that the ballistics toolmark analysis relied on by Matthews is not sufficiently reliable under Rule 702 to support his opinion that the projectiles were fired from the recovered revolver.

We do not address the merits of defendant's newly minted argument or the accuracy of either his unsupported assertions of fact or claims concerning the meaning of the articles, reports, and case law upon which he relies because he challenges for the first time on appeal the admissibility of Matthews's opinion that the projectiles were fired from the revolver.[1] Our review of alleged trial court errors "is not limitless" and "is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009). Where, as here, the "issue never was raised before the trial court, . . . its factual antecedents never were subjected to the rigors of an adversary hearing, and . . . its legal propriety never was ruled on

---

[1] Defendant does not challenge Matthews's opinion that Johnson's vehicle was struck by at least three bullets and the .22 caliber projectile recovered from the roof of Gorman's vehicle was not fired from the .38 Special revolver.

by the trial court, the issue was not properly preserved for appellate review." <u>Id.</u> at 18-19. Defendant's argument also does not "go to the jurisdiction of the trial court or concern matters of great public interest," warranting an exception to the general prohibition against deciding issues on appeal that "were not properly presented to the trial court." <u>Id.</u> at 20 (quoting <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973)).

Moreover, defendant makes no showing, and the record does not support a finding, that admission of Matthews's challenged opinion was clearly capable of producing an unjust result. <u>R.</u> 2:10-2. Matthews's opinion that the projectiles recovered from Johnson's vehicle were fired from the .38 Special revolver found on Eugene Avenue provides little, if any, evidence supporting defendant's guilt. The evidence overwhelmingly established that gunshots were fired into Johnson's vehicle, and defendant's counsel never argued to the contrary. The primary issue at trial was the credibility of the testimony of Gorman and Johnson, both of whom had relationships with defendant prior to the shooting. Matthews's testimony tied the gun to the shooting, but did not link defendant to the shooting or establish defendant was the shooter. No fingerprints were recovered from the gun, and Ceaser did not identify defendant as the person she observed with a gun fleeing from Gorman's vehicle on Eugene Avenue.

Most simply stated, there was no evidence tying defendant to the gun other than Gorman's and Johnson's testimony that defendant fired the shots at Johnson. The determination of defendant's guilt or innocence rested on the credibility of Gorman's and Johnson's versions of the shooting. Matthews's testimony about the projectiles found in Johnson's vehicle did not link defendant to the shooting, and it therefore was not clearly capable of affecting the outcome of the trial. Thus, defendant fails to establish that even if Matthews's opinion were inadmissible, he is entitled to a reversal of his conviction.

Defendant also argues the court erred by failing to instruct the jury on identification. Defendant did not request an identification charge and did not object to the court's instructions that lacked the charge. We therefore consider defendant's argument under the plain error standard. R. 2:10-2. In the context of a jury charge, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Montalvo, 229 N.J. 300, 321 (2017) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). Defendant makes no such demonstration here.

"[A]ppropriate and proper charges [to a jury] are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)).  A trial court has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party."  Ibid. (alteration in original) (quoting Reddish, 181 N.J. at 613). "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant."  Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

"[T]here is a presumption that [a] charge was not [in] error and was unlikely to prejudice the defendant's case" where, as here, there was no objection to the charge.  State v. Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 333-34 (1971)).  We consider the jury instructions "as a whole," State v. Brown, 190 N.J. 144, 160 (2007) (quoting State v. Torres, 183 N.J. 554, 564 (2005)), to "assess whether the jury instructions prejudicially affected [defendant's] substantial rights and could have led to an unjust result," Montalvo, 229 N.J. at 321.

"[A]s a matter of general procedure a model identification charge should be given in every case in which identification is a legitimate issue." State v. Davis, 363 N.J. Super. 556, 561 (App. Div. 2003). "When identification is a 'key issue,' the trial court must instruct the jury on identification, even if a defendant does not make that request." State v. Cotto, 182 N.J. 316, 325 (2005); accord State v. Green, 86 N.J. 281, 291 (1981). Identification is a key issue where "[i]t [is] the major, if not the sole, thrust of the defense . . . ." Green, 86 N.J. at 291.

We consider the court's failure to sua sponte provide an identification instruction under the totality of the circumstances presented, including the trial evidence, the arguments of counsel, and the court's other instructions. State v. Adams, 194 N.J. 186, 207 (2008). In Green, the Court determined that identification was a key issue requiring an identification instruction where the defendant was unknown to the victim, the crime was committed in the dark, the victim's description of the perpetrator conflicted with defendant's physical characteristics, there were no other corroborating witnesses, and defendant challenged the identification at trial. 86 N.J. at 291. In contrast, here the shooting occurred while it was light outside, defendant was well known to Gorman and Johnson, and there was no challenge to either their claimed

familiarity with defendant or their ability to recognize and identify defendant at trial. Thus, defendant's identification by Gorman and Johnson "was neither a contested nor key issue at trial." Id. at 326; cf. Cotto, 182 N.J. at 326 (finding identification was a "key issue" where the defendant focused on undermining the credibility of the State's witnesses and "offered an alibi defense"); State v. Frey, 194 N.J. Super. 326, 329 (App. Div. 1984) (finding identification instruction was required where the only witness to the crime was the alleged victim, the victim had a limited period of time to view the perpetrator, and hair, blood, and saliva samples from the crime scene did not conclusively match samples from the defendant).

In State v. Gaines, we found that the failure to provide an identification instruction did not require reversal because the two eyewitnesses knew the defendant prior to the aggravated manslaughter for which he was convicted, they both gave statements identifying the defendant, and "[t]heir independent identifications . . . were not dependent upon their ability to observe and recall physical features and characteristics of a person who was a stranger to them." 377 N.J. Super. 612, 626 (App. Div. 2005). We further observed that the court's other instructions "did not permit the jurors to conclude that they could convict

[the] defendant if the State had not established beyond a reasonable doubt that he was the person who fired the fatal shot." Id. at 625.

Our reasoning in Gaines applies with syllogistic precision here. As noted, defendant had relationships with, and was well known to, Gorman and Johnson prior to the shooting, their identifications were not dependent on their respective abilities to recall defendant's physical characteristics after a brief interaction with a stranger, and they separately identified defendant as the shooter at trial. Their respective abilities to properly identify defendant were not challenged at trial either through the introduction of evidence or by the arguments of defendant's counsel. In addition, the court's other instructions defined the elements of each of the crimes charged as requiring the State to prove beyond a reasonable doubt that defendant committed the charged offenses. Thus, we find here, as we did in Gaines, that "[c]onsidering the corroborating evidence in light of the issues in dispute and the [court's instructions] as a whole," the lack of an identification charge "was clearly incapable of producing an unjust result." Id. at 627.

Having found the court did not commit any errors, we reject defendant's final contention that the purported cumulative errors deprived him of a fair trial. See State v. Weaver, 219 N.J. 131, 155 (2014) (finding "the theory of cumulative

15

error . . . will . . . not apply where no error was prejudicial and the trial was fair").

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16