RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0624-15T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

B.J.,

 Defendant-Appellant.
_____________________________

 Submitted May 16, 2017 – Decided July 25, 2017

 Before Judges Fisher, Vernoia and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Law Division, Camden County,
 Indictment No. 13-07-2084.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Monique Moyse, Designated
 Counsel, on the brief).

 Mary Eva Colalillo, Camden County Prosecutor,
 attorney for respondent (Linda A. Shashoua,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant appeals his convictions and aggregate sixty-year

custodial sentence following a jury trial for attempted murder,
endangering the welfare of a child, terroristic threats, aggravated

assault and weapons charges. Based on our review of the record in

light of the applicable law, we affirm defendant's convictions and

sentence, vacate the court's order requiring restitution, and remand

for a restitution hearing.

 I.

 The criminal charges against defendant arise out of a January

24, 2013 incident during which he shot his eleven-year-old daughter

Y.P. in the face with a handgun, and threatened and assaulted

Y.P.'s mother S.P. (Sally),1 and her mother's boyfriend W.M.

(Warren). Defendant was arrested shortly after leaving the scene.

 Defendant was charged in a fourteen-count indictment with:

first-degree attempted murder of Y.P., N.J.S.A. 2C:5-1 and

N.J.S.A. 2C:11-3(a) (count one); second-degree endangering the

welfare of a child, Y.P., N.J.S.A. 2C:24-4(a) (count two); first-

degree attempted murder of Warren, N.J.S.A. 2C:5-1 and N.J.S.A.

2C:11-3(a) (count three); third-degree terroristic threats against

Sally, N.J.S.A. 2C:12-3(a), (b) (count four); third-degree

terroristic threats against Y.P., N.J.S.A. 2C:12-3(a), (b) (count

five); third-degree terroristic threats against Warren, N.J.S.A.

2C:12-3(a), (b) (count six); fourth-degree aggravated assault

1
 We employ initials and pseudonyms to protect the privacy of the
minor child and other victims in this matter.

 2 A-0624-15T3
against Y.P. by pointing a firearm at her, N.J.S.A. 2C:12-1(b)(4)

(count seven); fourth-degree aggravated assault against Warren by

pointing a firearm at him, N.J.S.A. 2C:12-1(b)(4) (count eight);

second-degree possession of a handgun for an unlawful purpose,

N.J.S.A. 2C:39-4(a) (count nine); second-degree unlawful

possession of a handgun, N.J.S.A. 2C:39-5(b) (count ten); third-

degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(b) (count eleven);

fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count

twelve); third-degree unlawful possession of a controlled

dangerous substance, N.J.S.A. 2C:35-10(a) (count thirteen);

second-degree possession of a weapon by a certain person not to

have weapons, N.J.S.A. 2C:39-7(b) (count fourteen).

 Prior to defendant's jury trial, the court dismissed count

thirteen. Defendant proceeded to trial on the first twelve counts

of the indictment and after the jury returned its verdict,

conducted a separate trial before the same jury on the certain

persons charge contained in count fourteen.2

 The evidence presented during the trials showed that Y.P.

lived with Sally, Warren, her two sisters and an uncle, B.M.

(Barry). Defendant, Y.P.'s biological father, visited Y.P. about

once each month at her home.

2
 See State v. Ragland, 105 N.J. 189, 193-94 (1986).

 3 A-0624-15T3
 During a January 24, 2013 visit, Warren let defendant in the

home and defendant sat on the living room stairs. Warren was also

in the living room seated with Y.P. on a sofa. Sally sat nearby.

 After a few minutes, defendant pulled a handgun out of his

pants and Y.P. reacted by saying, "he's got a gun, he's got a

gun." Y.P. screamed at defendant, telling him to leave the house

with the gun. Sally asked if the gun was real and defendant said

it was not. Defendant told Y.P. to "shut up," but she continued

screaming, saying, "Get the gun out of my mommy['s] house," and

"you don't love me, you don't love my mother, you don't respect

my mother to bring that gun into her house." Sally told defendant

to leave the house with the gun, but defendant repeatedly stated,

"It's a fake gun." He said, "Allah Akbar, we're all gonna die, we

must die." Y.P. repeatedly stated to Warren, "Daddy, I'm scared."

 Defendant moved toward the door, but then turned around and

walked directly toward Y.P. He told her to "shut up," and shot her

in the face. Sally and Warren fell back onto the sofa. Defendant

stood over Warren and pointed the gun at him. Warren pled for

defendant not to shoot him, and believed defendant pulled the

gun's trigger but it did not fire.

 Warren then charged at defendant in an effort to get the gun.

As Warren and defendant wrestled over the gun, defendant repeatedly

screamed, "What did I do? It wasn't real." Warren took the gun

 4 A-0624-15T3
from defendant and realized there were bullets jammed inside of

it. He cleared the jam and replaced the gun's magazine. Sally

attended to Y.P. and saw her face bleeding. Sally screamed, "[H]e

shot my daughter. . . . My baby's dead," as defendant repeated,

"Allah Akbar, we all must die."

 Defendant ran from the house as Warren shot at him with the

gun. Warren pursued defendant and continued to fire gunshots as

defendant ran across the street toward an apartment complex.

 Police officers arrived. Sally told the officers where

defendant went and they located defendant walking away with blood

on his shirt. The officers approached defendant, but he continued

walking and disobeyed the officers' commands to stop and surrender.

The officers tackled defendant and he kicked and punched them in

an attempt to get away. The officers subdued defendant and placed

him under arrest. The officers returned to Y.P.'s home, where

Warren turned over defendant's handgun.

 Y.P. was transported to the hospital. It was determined a

bullet entered her left cheek, severed her spinal cord, and lodged

in her left chest, causing a lung injury that required she be

placed on a ventilator. She spent four months in the hospital,

underwent multiple surgeries, and was discharged to a spinal cord

injury center for rehabilitation. She is paralyzed below the waist,

 5 A-0624-15T3
confined to a wheelchair, and has diminished sensations in her

arms and hands.

 Following the presentation of the evidence, the jury found

defendant guilty of first-degree attempted murder of Y.P. (count

one), second-degree endangering the welfare of a child (count

two), two counts of third-degree terroristic threats (counts five

and six), two counts of fourth-degree aggravated assault (counts

seven and eight), second-degree possession of a handgun for an

unlawful purpose (count nine), second-degree unlawful possession

of a handgun (count ten), and, following a second trial before the

same jury, second-degree possession of a weapon by certain persons

not to have weapons (count fourteen). The jury also found defendant

guilty of lesser-included offenses of harassment, N.J.S.A. 2C:33-

4, under count four, and resisting arrest, N.J.S.A. 2C:29-2(a)(1),

under counts eleven and twelve. Defendant was found not guilty of

the attempted murder of Warren alleged in count three.

 The court sentenced defendant to an extended term fifty-year

sentence on the first-degree attempted murder charge under

N.J.S.A. 2C:43-7, subject to the requirements of the No Early

Release Act, N.J.S.A. 2C:43-7.2. The court imposed a consecutive

ten-year sentence with a five-year period of parole ineligibility

on defendant's conviction under count fourteen for second-degree

possession of a weapon by certain persons not to have weapons. The

 6 A-0624-15T3
sentences imposed on the remaining counts were made concurrent to

the attempted murder sentence. This appeal followed.

 On appeal, defendant makes the following arguments:

 POINT ONE

 THE TRIAL COURT DENIED [DEFENDANT'S] RIGHT TO
 DUE PROCESS AND A FAIR TRIAL WHEN IT RULED
 THAT HE HAD WAIVED HIS RIGHT TO TESTIFY. (Not
 Raised Below).

 POINT TWO

 THE TRIAL COURT ERRED IN FAILING TO ORDER A
 COMPETENCY EVALUATION BECAUSE THE RECORD
 SUPPORTS A BONA FIDE DOUBT AS TO [DEFENDANT'S]
 COMPETENCY TO STAND TRIAL. (Not Raised Below).

 POINT THREE

 THE TRIAL COURT'S ERRONEOUS JURY CHARGES ON
 IDENTIFICATION AND FLIGHT DEPRIVED
 [DEFENDANT] OF HIS RIGHT TO DUE PROCESS AND A
 FAIR TRIAL. (U.S. Const. [amends. V, VI, and
 XIV]; N.J. Const. [art. I, ¶¶ 1, 9, and 10).]
 (Not Raised Below).

 1. The trial court deprived
 [defendant] of due process and a
 fair trial when it failed to
 instruct the jury properly on
 identification when his sole
 defense was misidentification.

 2. The trial court deprived
 [defendant] of due process and a
 fair trial when it failed to charge
 the jury properly on flight.

 . . . .

 7 A-0624-15T3
 POINT FOUR

 THE TRIAL COURT ABUSED ITS DISCRETION BY
 IMPOSING A MANIFESTLY EXCESSIVE SENTENCE AND
 FAILING TO HOLD A RESTITUTION HEARING.

 A. The court erred by imposing the
 maximum sentence.

 B. The court erred by failing to
 hold a restitution hearing.

 II.

 Defendant's arguments concerning the court's alleged trial

errors are raised for the first time on appeal. We therefore

consider the arguments under the plain error standard and will not

reverse unless the errors are "clearly capable of producing an

unjust result." R. 2:10-2. We reverse only where there is a

possibility of an unjust result "sufficient to raise a reasonable

doubt as to whether the error led the jury to a result it otherwise

might not have reached." State v. G.V., 162 N.J. 252, 280 (2000)

(quoting State v. G.S., 145 N.J. 460, 473 (1996)). We find no such

errors here.

 We first consider defendant's argument that the court was

obligated to sua sponte order a competency hearing and determine

his fitness to proceed during the trial. He claims that statements

he made to the court and his trial counsel's purported inability

to communicate with him raised a bona fide issue about his

 8 A-0624-15T3
competence, and the court erred by failing to order a competency

hearing.

 "The court decides whether a competency hearing is required;

there are 'no fixed or immutable signs which invariably indicate

the need for further inquiry to determine fitness to proceed.'"

State v. Gorthy, 226 N.J. 516, 530 (2016) (quoting Drope v.

Missouri, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103,

118 (1975)). "Where evidence raises a bona fide doubt as to a

defendant's competence, a competency hearing must be held." State

v. Purnell, 394 N.J. Super. 28, 47 (App. Div. 2007).

 "However, absent any indication of incapacity to stand trial,

the court is not bound to interrupt a trial." State v. Spivey,

65 N.J. 21, 36 (1974). "'Mere suggestion' of incapacity is not

sufficient." Ibid. "No court would be bound to stop, or justified

in arresting the progress of a trial by a mere suggestion of, but

in the absence of any substantial evidence of the existence of a

degree of mental disorder which would unfit the defendant from

conducting his cause or instructing his counsel." Id. at 36-37

(quoting State v. Peacock, 50 N.J.L. 34, 36 (Sup. Ct. 1887), rev'd

on other grounds, 50 N.J.L. 653 (E. & A. 1888)).

 Although the court may sua sponte order a competency hearing,

"the standard of review for failure to initiate the inquiry is a

strict one." Id. at 37. The court's failure to raise the issue

 9 A-0624-15T3
"will not be reviewed on appeal, unless it clearly and convincingly

appears that the defendant was incapable of standing trial." State

v. Lucas, 30 N.J. 37, 73-74 (1959). To satisfy the standard, there

must be a "'bona fide doubt' as to defendant's competence to stand

trial." Spivey, supra, 65 N.J. at 37 (quoting Pate v. Robinson,

383 U.S. 375, 385, 86 S. Ct. 836, 842, 15 L. Ed. 2d 815, 822

(1966)). "It is to be ordinarily expected that defense counsel,

who is in a far better position than the trial judge to assay the

salient facts concerning the defendant's ability to stand trial

and assist in his own defense, would originate the request that

such an inquiry be conducted." Ibid. (quoting Lucas, supra, 30

N.J. at 73-74).

 The standard for determining competency to stand trial is

"whether [the defendant] has sufficient present ability to consult

with his lawyer with a reasonable degree of rational

understanding[,] and whether he has a rational as well as factual

understanding of the proceedings against him." Dusky v. United

States, 362 U.S. 402, 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824,

825 (1960). In New Jersey, competency requires that a defendant

"appreciate his presence in relation to time, place and things,"

N.J.S.A. 2C:4-4(b)(1), and understand his presence in a courtroom

facing criminal charges; the role of the judge, prosecutor, and

defense attorney; his rights and the consequences of waiving them;

 10 A-0624-15T3
and his ability to participate in his own defense, N.J.S.A. 2C:4-

4(b)(2). See Gorthy, supra, 226 N.J. at 531-32.

 Based on our careful review of the trial record, we are not

persuaded defendant's statements to the court raised a bona fide

doubt about his competency. To be sure, defendant declared he was

"not mentally fit," needed to "see a psychiatrist," and did not

understand what was going on. But when viewed in context, the

statements did not clearly and convincingly create a bona fide

doubt as to defendant's competence under N.J.S.A. 2C:4-4(b)(1)

requiring a sua sponte order for a competency hearing.

 Despite his self-serving and conclusory assertions to the

contrary, defendant demonstrated an understanding of the

proceedings throughout the entirety of the trial. The record shows

that during his limited direct interactions with the court,

defendant referred to the judge as "Your Honor," and responded to

the judge's inquiry concerning any pre-trial issues by asking if

he could make a statement "for the record." When permission was

granted, defendant challenged the subject matter jurisdiction of

the court, declared he was appearing "without prejudice, and

without [waiving] any rights, remedy, statutorial [sic] or

procedural," and said he did not "want to participate" in the

proceeding. When defendant was questioned by the court concerning

his election not to testify, he made the self-serving statement

 11 A-0624-15T3
that he did not understand and was not "fit for trial," but he

also declared the he did not want to "do nothing."

 Beyond his conclusory assertions, the record is devoid of

evidence that any purported self-proclaimed mental condition or

lack of understanding affected his ability to understand his

surroundings, the nature of the proceedings, or his ability to

participate in his own defense. Moreover, defendant's counsel, who

was in the best position to assess defendant's competence, never

raised the issue despite working directly with defendant,

conferring with him before and during the trial, and consulting

with him about his election not to testify. We find defendant's

unsupported and self-serving declarations during the trial did not

give rise to a bona fide doubt as to his competency to stand trial,

and the court did not err by failing to sua sponte order a

competency hearing.

 III.

 Defendant also contends for the first time on appeal that the

court erred by finding he knew he had the right to testify at

trial and waived his right to testify. He argues that although the

court informed him on two separate occasions about his decision

whether or not to testify, the court committed plain error by

determining he waived his right to testify. We find the argument

to be without sufficient merit to warrant a discussion in a written

 12 A-0624-15T3
opinion, R. 2:11-3(e)(2), other than to offer the following

comments.

 The decision to testify in a criminal case belongs to the

defendant, and it "is an important strategical choice, [to be]

made by defendant in consultation with counsel." State v. Savage,

120 N.J. 594, 630-31 (1990). When a defendant is represented by

counsel, the court is not required to inform defendant of his

right to testify or explain the consequences of the choice, and

defendant's waiver of the right to testify "need not be on the

record to withstand appellate scrutiny." State v. Buonadonna, 122

N.J. 22, 36 (1991).

 Here, the record shows that although the court was not

obligated to do so, on two occasions it explained to defendant

that he had the right to testify at trial or to remain silent.

Defendant's counsel was afforded ample time during the course of

the trial to discuss defendant's decision and confirmed he

conferred with defendant about his options. When the court asked

defendant about his decision, defendant repeated his conclusory

assertion that he was not fit for trial and said he did not "want

to proceed with nothing." Counsel explained he discussed the issue

with defendant and gave defendant "every opportunity . . . to

think about it." Defendant, however, refused to respond to the

court's repeated questioning about his decision, and the judge

 13 A-0624-15T3
indicated that he would accept the refusal to respond as an

expression of a decision not to testify. Neither defendant nor his

counsel objected to the court's interpretation of defendant's

silence.

 Moreover, the court's acceptance of defendant's silence as

an election not to testify was not dispositive and did not preclude

defendant from testifying if he chose to do so. The court did not

bar defendant from testifying. Following the court's final

colloquy with defendant and his counsel concerning defendant's

decision about testifying, defendant had the opportunity to call

witnesses, including himself, in support of his defense. Instead,

defendant rested without calling any witnesses. Under such

circumstances, we cannot conclude that the court's colloquy with

defendant concerning his decision whether or not to testify, and

its acceptance of defendant's silence as an election not to

testify, was clearly capable of producing an unjust result.

 IV.

 Defendant next argues the court erred by failing to charge

the jury on identification and by failing to provide a complete

jury instruction on flight. Defendant acknowledges he did not

request the omitted charges or object to the omission of them, but

contends the alleged errors constitute plain error warranting

reversal. We are not persuaded.

 14 A-0624-15T3
 Where a party does not object to a jury charge, "there is a

presumption that the charge was not error and was unlikely to

prejudice the defendant's case." State v. Singleton, 211 N.J. 157,

182 (2012). Where there is no objection to a jury charge and the

charge is challenged on appeal, we review the jury instructions

for plain error and determine if the alleged error is "clearly

capable of producing an unjust result." State v. Montalvo, ___

N.J. ___, ___ (June 8, 2017) (slip op. at 31) (quoting R. 2:10-

2); accord Singleton, supra, 211 N.J. at 182. Establishing "plain

error requires demonstration of 'legal impropriety in the charge

prejudicially affecting the substantial rights of the defendant

and sufficiently grievous to justify notice by the reviewing court

and to convince the court that of itself the error possessed a

clear capacity to bring about an unjust result.'" Montalvo, supra,

slip op. at 31 (quoting State v. Chapland, 187 N.J. 275, 289

(2006)).

 We reject defendant's contention that the court's failure to

provide an identification charge constitutes plain error. The

model jury instruction on identification should generally be given

in every case where identification is a legitimate issue. State

v. Cotto, 182 N.J. 316, 325-26 (2005). "When identification is a

'key issue,' the trial court must instruct the jury on

identification, even if a defendant does not make that request."

 15 A-0624-15T3
Id. at 325 (quoting State v. Green, 86 N.J. 281, 291 (1981)).

Identification is a "key issue when '[i]t [is] the major . . .

thrust of the defense,' particularly in cases where the State

relies on a single victim-eyewitness." Ibid. (quoting Green,

supra, 86 N.J. at 291); see, e.g., State v. Frey, 194 N.J. Super.

326, 329 (App. Div. 1984) ("The absence of any eyewitness other

than the victim and defendant's denial of guilt, made it essential

for the court to instruct the jury on identification.").

 Here, identification was not a key issue at trial because

defendant's identity was not disputed. Defendant was identified

at trial by his daughter Y.P., who testified that defendant held

a gun, told her to "shut up," and shot her in the face. Defendant

was also identified by Sally, Warren and Barry, each of whom knew

defendant for long periods prior to the incident.

 Defendant argues identification was a key issue because it

is unclear whether Y.P. was injured by a gunshot fired by defendant

or one fired by Warren following his tussle with defendant for the

handgun. But that is not an identification issue; it is a causation

issue. Where, as here, identification was not an issue at all, the

court did not err by failing to sua sponte give an identification

charge. See State v. Gaines, 377 N.J. Super. 612, 625-27 (App.

Div.) (finding failure to provide identification charge is not

plain error where identification was not a key issue and there was

 16 A-0624-15T3
overwhelming identification evidence), certif. denied, 185 N.J.

264 (2005); cf. State v. Davis, 363 N.J. Super. 556, 561 (App.

Div. 2003) (holding an identification instruction was required

where a misidentification defense "although thin, was not

specious").

 Moreover, the jury was otherwise clearly instructed that the

State must prove beyond a reasonable doubt defendant committed the

crimes for which he was charged. Under all of the circumstances

presented, we are not convinced the court's failure to sua sponte

give an identification charge had the clear capacity to bring

about an unjust result. Montalvo, supra, slip op. at 31.

 V.

 Defendant also contends the court erred by providing an

incomplete charge on flight. The model jury charge on flight

requires that where the defense has not denied that the defendant

departed the scene "but has suggested an explanation" for the

defendant's departure, the court shall advise the jury of the

explanation. The court must also instruct the jury that if it

determines the explanation is credible, an inference of the

defendant's consciousness of guilt should not be drawn by the

departure. See Model Jury Charge (Criminal), "Flight" (May 2010).

 Defendant argues there was evidence showing he left the scene

because Warren was shooting at him, and the jury should have been

 17 A-0624-15T3
advised that if it accepted defendant's reason for his departure,

it should not infer his departure showed consciousness of guilt.

We are not convinced it was plain error for the court to omit that

portion of the flight charge. We presume the omission of the

instruction was "unlikely to prejudice the defendant's case"

because defendant did not request it or object to the instructions

that did not include it. Singleton, supra, 211 N.J. at 182.

 Moreover, the jury was instructed it could only consider

defendant's flight as evidence of consciousness of guilt if it

determined "defendant's purpose in leaving was to evade accusation

or arrest for the offense[s] charged in the indictment." Model

Jury Charge (Criminal), "Flight" (May 2010). The jury instruction

given by the court provided "sufficient guidance" to the jury and

did not create any "risk that the . . . ultimate determination of

guilt or innocence [was] based on speculation, misunderstanding,

or confusion." State v. Olivio, 123 N.J. 550, 567-68 (1991). We

presume the jury followed the court's instructions, State v. Burns,

192 N.J. 312, 335 (2007), and are satisfied the jury would not

have inferred consciousness of guilt if it also determined

defendant departed because he was being shot at by Warren. We

therefore discern no basis to conclude the omission of the

instruction was clearly capable of producing an unjust result. R.

2:10-2.

 18 A-0624-15T3
 VI.

 Defendant last argues his sixty-year aggregate sentence is

excessive and that the court erred by ordering that he make

restitution without first conducting a restitution hearing. He

claims the court erred by failing to find the following mitigating

factors: two, defendant did not contemplate that his conduct would

cause harm, N.J.S.A. 2C:44-1(b)(2); four, there were substantial

ground tending to excuse his conduct, though failing to establish

a defense, N.J.S.A. 2C:44-1(b)(4); and eight, defendant's conduct

was the result of circumstances unlikely to recur, N.J.S.A. 2C:44-

1(b)(8). He also contends the court placed too much weight on

aggravating factor nine, the need to deter the defendant and others

from violating the law, N.J.S.A. 2C:44-1(a)(9). Defendant claims

the court's failure to find the mitigating factors and its error

in weighing aggravating factor nine resulted in an excessive

sentence.

 We review a "trial court's 'sentencing determination under a

deferential standard of review.'" State v. Grate, 220 N.J. 317,

337 (2014) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)).

We may "not substitute [our] judgment for the judgment of the

sentencing court." Lawless, supra, 214 N.J. at 606. We must affirm

a sentence if: (1) the trial court followed the sentencing

guidelines; (2) its findings of fact and application of aggravating

 19 A-0624-15T3
and mitigating factors were based on competent, credible evidence

in the record; and (3) the application of the law to the facts

does not "shock[] the judicial conscience." State v. Bolvito, 217

N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65

(1984)); see also State v. Case, 220 N.J. 49, 65 (2014).

 A sentencing court must find mitigating factors that are

supported by the record, and should accord them such weight as it

deems appropriate. Grate, supra, 220 N.J. at 338; Case, supra, 220

N.J. at 64-65. Defendant contends the court erred by failing to

find mitigating factors two, four and eight, but did not request

that the court find those factors at the time of sentencing. See

State v. Blackmon, 202 N.J. 283, 297 (2010) ("Although there is

more discretion involved in identifying mitigating factors than

in addressing aggravating factors, those mitigating factors that

are suggested in the record, or are called to the court's

attention, ordinarily should be considered and either embraced or

rejected on the record.") (emphasis added); State v. Bieniek, 200

N.J. 601, 609 (2010) (encouraging trial courts to address each

mitigating factor raised by defendants).

 Nevertheless, the court considered each of the mitigating

factors and determined none were supported by the record. And the

record supports the court's determination. Defendant's assertion

the court should have found mitigating factor two is undermined

 20 A-0624-15T3
by the evidence that he carried a handgun, used it to shoot his

daughter, and caused her debilitating injuries. Defendant's

claimed entitlement to findings of mitigating factors four and

eight is based on what he alleges a mental health evaluation,

which was never requested or performed, might have shown. Thus,

there was no evidence before the court supporting a finding of

mitigating factors two, four and eight.

 We also reject defendant's contention the court erred in its

weighing of aggravating factor nine. Defendant's assertion that

aggravating factor nine is of "limited penal significance" lacks

merit. Our Supreme Court has noted that the need for deterrence

is one of the most important factors in sentencing. State v.

Fuentes, 217 N.J. 57, 78-79 (2014). In Fuentes, the Court stated

that in considering aggravating factor nine, a sentencing court

must make a qualitative assessment of the defendant's risk of

recidivism in light of the defendant's history, including but not

limited to the defendant's criminal history. Id. at 79. Here,

the court fulfilled this mandate by considering defendant's

personal history and extensive juvenile adjudications and adult

criminal history in determining the need for deterrence.

 We are not persuaded by defendant's argument that his sentence

is excessive. To be sure, the court imposed a long sentence, but

defendant was subject to a mandatory extended term sentence of

 21 A-0624-15T3
between twenty years and life in prison, N.J.S.A. 2C:43-7. The

record shows the court carefully considered defendant's prior

criminal record and the circumstances of the offenses for which

he was convicted, correctly found and weighed the aggravating and

mitigating factors, and imposed a sentence in accordance with the

applicable legal principles that does not shock our judicial

conscience. Bolvito, supra, 217 N.J. at 228.

 We are, however, persuaded the court erred by ordering that

defendant pay $971.29 in restitution. To properly determine the

amount of restitution, a sentencing court must "take into account

all financial resources of the defendant, including the

defendant's likely future earnings, and . . . set the amount

. . . that is consistent with the defendant's ability to pay."

N.J.S.A. 2C:44-2(c)(2). Where necessary, the court must conduct a

hearing to determine "the amount the defendant can pay and the

time within which he can reasonably do so." State v. Topping, 248

N.J. Super. 86, 90 (App. Div. 1991) (quoting State v. Paladino,

203 N.J. Super. 537, 547 (1985)). The record lacks any showing the

court considered either defendant's financial resources or ability

to pay. We are therefore constrained to vacate the restitution

order and remand for reconsideration of defendant's obligation,

if any, to make restitution.

 22 A-0624-15T3
 Defendant's remaining arguments are without sufficient merit

to warrant discussion in a written opinion. R. 2:11-3(e)(2).

 We affirm defendant's convictions and sentences, vacate that

portion of the judgment of conviction ordering that defendant make

restitution, and remand for reconsideration of the State's request

for restitution in accordance with this opinion. We do not retain

jurisdiction.

 23 A-0624-15T3