194 N.J. Super. 622 (1984)
477 A.2d 462
THE STATE OF NEW JERSEY
v.
MICHAEL TATE, DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
Decided April 6, 1984.
*624 Anthony J. Mellaci, Jr., Assistant Prosecutor, for the State (John A. Kaye, Monmouth County Prosecutor, Michael J. Gross, Legal Assistant, on the brief.)
Robert I. Ansell, Esquire, for the defendant (Anschelewitz, Barr, Ansell and Bonello, attorneys.)
McGANN, J.S.C.
Michael Tate has been indicted for unlawful possession of marijuana on March 29, 1983, in violation of N.J.S.A. 24:21-20(a). The defense has given notice to the prosecution that at trial the fact of possession will be admitted but that proofs will be adduced on the alleged defense of "medical necessity" for the possession and use of the substance. The State moves for a pretrial resolution of its contention that as a matter of law, "medical necessity" is not a cognizable defense to this criminal charge. For reasons which follow, I rule that "medical necessity" can be a viable defense and, accordingly, deny the State's motion to strike.
Michael Tate is a quadriplegic. He alleges that he uses marijuana because it eases the pain of spastic contractions to which his body is regularly subject and that no other prescribable medication gives him such relief.
N.J.S.A. 24:20-20(a) provides:

*625 It is unlawful for any person, knowingly or intentionally, to obtain, or to possess, actually or constructively, a controlled dangerous substance unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this act.
The penalty for obtaining or possessing marijuana in an amount of more than 25 grams is imprisonment for up to five years or a fine of $15,000 or both. N.J.S.A. 24:21-20(a)(4). Marijuana is classified as a Schedule I controlled dangerous substance. That classification means that the Commissioner of Health has found that it "(1) has high potential for abuse; and (2) has no accepted medical use in treatment in the United States; or lacks accepted safety for use in treatment under medical supervision." N.J.S.A. 24:21-5. It is a non-prescribable controlled dangerous substance.
Tate argues here that at trial he will be able to adduce proofs from which a jury could conclude that it is medically necessary that he have and use marijuana to alleviate his symptoms in similar fashion to its use by glaucoma and cancer patients  a practice permitted under certain federal and state laws and by court decisions in a limited number of jurisdictions. The State argues that such proofs are legally irrelevant; that the prohibition against obtaining or using marijuana in New Jersey is absolute; that "medical necessity" as a justification for criminal conduct is not recognized under our law and that Tate will have to rely on other prescribable medications to alleviate his condition.
"Necessity" as an affirmative defense based on justifiable conduct appears in the New Jersey Code of Criminal Justice. It is not, however, defined. N.J.S.A. 2C:3-2a. provides as follows:
a. Necessity. Conduct which would otherwise be an offense is justifiable by reason of necessity to the extent permitted by law and as to which neither the code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved and a legislative purpose to exclude the justification claimed does not otherwise plainly appear.
What does "necessity to the extent permitted by law" mean? Does that phrase include "medical necessity"?
*626 The inquiry begins with Vol. II Commentary, The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, October, 1971. At page 80 the Commission commented on "necessity" in the following language:
This Section incorporated the defense of necessity to the extent that such a defense is now permitted to operate to justify conduct under the law. There is no existing statute on the necessity problem in New Jersey and there have been no cases dealing with the issue. The drafters of the MPC take the position that, "while the point has not been free from controversy, it seems clear that necessity has standing as a common-law defense. Such issue as there is relates to its definition of scope." MPC T.D. 8, p. 5 (1958). Many other states have adopted statutes recognizing the defense and defining its limits. The Commission believes it more appropriate to leave the issue to the Judiciary. The rarity of the defense and the imponderables of the particulars of specific cases convince us that the Courts can better define and apply this defense than can be done through legislation. In this regard, the courts should look both to MPC § 3.02 and New York Penal Code § 35.05 for guidance as to the scope of the defense as defined at common law.
As pointed out in the commentary the defense of necessity did exist at common law. The framers of the Code evidently intended not only that it be incorporated into the framework of our criminal law, but that it be allowed to grow and be clarified (in the traditional evolutionary process of the common law) on a case by case basis and against varied factual backgrounds.
The basic thrust of the common law was stated by the Supreme Court of Vermont in the following fashion:
The defense of necessity proceeds from the appreciation that, as a matter of public policy, there are circumstances where the value protected by the law is eclipsed by a superseding value, and that it would be inappropriate and unjust to apply the usual criminal rule. State v. Warshow, 138 Vt. 22, 26, 410 A.2d 1000, 1003 (1980).
Courts have considered necessity as a justification for criminal acts under the following, varying, factual conditions. These cases convey a sense of what public policy has meant to different courts in the past.
A woman, while under the influence of alcohol, drove herself to a hospital after a brutal beating by her husband. The court held that "her need for treatment as she conceived it to be, *627 outweighed the criminal law of driving under the influence." State v. Shotton, 142 Vt. 558, 458 A.2d 1105 (1983).
A vessel was ruled not liable for a violation of embargo laws where, during a legitimate voyage, it was obliged by stress of weather to take refuge in a proscribed port. Brig "Struggle" v. United States, 13 U.S. (9 Cranch) 71, 3 L.Ed. 660 (1815).
Self defense, defense of another, defense of one's home have always been considered necessitous circumstances justifying the use of force which otherwise would be criminal. See N.J.S.A. 2C:3-4, 5 and 6 as generally codifying this concept.
Mutiny at sea was held justifiable as necessary if it could be shown that the sailors had a reasonable basis for perceiving that the only means of preserving their safety would be to disobey their captain. United States v. Ashton, 24 F.Cas. 873 (C.C.D.Mass. 1834).
A speeding violation was justified by necessity where the driver was a military dispatcher delivering an emergency message in time of war. State v. Burton, 41 R.I. 303, 103 A. 962 (1918).
The necessity defense, however, was unavailable to one who burglarized a restaurant and sought to justify the act on the basis that he needed the money taken for food for his family. There were alternate means available to meet that concern. State v. Gann, 244 N.W.2d 746 (N.D. 1976).
However, when deliberate homicide was involved, (and except for self-defense and defense of another or of one's home) common law courts did not allow necessity as a justification for the criminal act. Thus in United States v. Holmes, 26 F.Cas. 360 (CC E.D.Pa. 1842) a sailor was tried for causing male passengers to be thrown overboard to prevent a lifeboat full of women and children from capsizing because of overloading. Necessity was ruled out as justification as a matter of law. In Regina v. Dudley & Stephens, 14 Q.B.D. 273 (1884) an English court found guilty of murder two shipwreck survivors who had killed a companion and eaten his flesh to survive while awaiting *628 rescue. They attempted to justify the act on the basis of necessity; that it was better to sacrifice the life of their nearly dead companion rather than all three die. The defense was ruled out as a matter of law.
From these and similar cases, the common law developed principles which were synthesized by the court in State v. Shotton, above, 458 A.2d at 1106 in this fashion:
The elements of the defense of necessity are:
(1) There must be a situation of emergency arising without fault on the part of the actor concerned;
(2) This emergency must be so imminent and compelling as to raise a reasonable expectation of harm, either directly to the actor or upon those he was protecting;
(3) This emergency must present no reasonable opportunity to avoid the injury without doing the criminal act; and
(4) The injury impending from the emergency must be of sufficient seriousness to outmeasure the criminal wrong.
The authors of the Model Penal Code codified the justification of necessity as follows:
Sec. 3.02 Justification Generally: Choice of Evils.
(1) Conduct which the actor believes to be necessary to avoid harm or evil to himself or to another is justifiable, provided that:
(a) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and
(b) neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
(c) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.
(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this Section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.
The New York codifiers, to whom the New Jersey Study Commission also looked, set forth necessity in the New York Penal Code as follows:
Sec. 35.05 Justification; Generally
Unless otherwise limited by the ensuing provisions of this article defining justifiable use of physical force, conduct which would otherwise constitute an offense is justifiable and not criminal when:

*629 1. Such conduct is required or authorized by law or by a judicial decree, or is performed by a public servant in the reasonable exercise of his official powers, duties or functions; or
2. Such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue. The necessity and justifiability of such conduct may not rest upon considerations pertaining only to the morality and advisability of the statute, either in its general application or with respect to its application to a particular class of cases arising thereunder. Whenever evidence relating to the defense of justification under this subdivision is offered by the defendant, the court shall rule as a matter of law whether the claimed facts and circumstances would, if established, constitute a defense.
Certain common elements appear in that common law synthesis, in the Model Penal Code and in the New York Penal Code. They are:
1. There must be a perception (reasonable and genuine on the part of the actor) of threatened harm.
2. That threatened harm must have arisen through no fault on the part of the actor.
3. The only way to avoid the harm is by committing a criminal act.
4. The harm threatened is so great that as a matter of public policy it can be said to outweigh the values protected by the criminal law which is broken.
The New Jersey Criminal Code is at least that broad.
In the common law formulation as well as that of the New York Code the sense of "emergent" as a requisite appears to be significant. Yet the cases are not clear as to what that means. "Unexpected" would be an equally acceptable synonym. "Unusual" should also permit the same result in the examples noted above. On analysis, the essential concept is that circumstances have come together at a point in time which force an individual to choose between harm and an illicit act. "Necessity" enters into the picture when the illicit act is the only alternative and *630 public policy dictates that society can accept that particular criminal act without exacting punishment for it in the face of the real harm it avoids.
Neither the Model Penal Code nor the New Jersey Criminal Code use the words "emergent" or "emergency". I find that such deliberate avoidance, adopted by the Legislature, was intended to eliminate the significance of the "emergent" requirement which seemingly had become part of the common law.
That interpretation is borne out with the development of "medical necessity" by case law. The concept of "medical necessity" as justification for a criminal act seems first to have been raised in the context of abortion cases. See "Medical Necessity As a Defense to Criminal Liability": United States v. Randall, 46 Geo.Wash.L.Rev. 273 (1978). In United States v. Randall, 104 Daily Wash.L.Rptr. 2249 (D.C.Super.Ct. 1976) the defendant was charged with illegal possession of marijuana. He testified he used it to treat his glaucoma symptoms. He presented expert medical testimony that conventional glaucoma medications were ineffectual and that marijuana did lessen the visual distortions and inner ocular pressure caused by the disease. The values which the court then balanced were the defendant's interest in preserving some eyesight and the government's interest in controlling the use of marijuana by prohibiting its possession. The court (the case was apparently tried without a jury) held, under principles of necessity that the individual's rights to preserve his sight outweighed the government's interest in outlawing the drug  in that isolated case. It did not comment on the fact that no emergent situation (in the common law sense) was present. The highest state court which has considered this particular context of the medical necessity defense is that of the State of Washington in State v. Diana, 24 Wash. App. 908, 604 P.2d 1312 (1979). Defendant was charged with illegal possession of marijuana. At trial he relied principally on a motion to suppress the evidence. The motion was denied. He was convicted and appealed. The denial of the *631 motion was affirmed on appeal. However, the germ of a defense of justification by medical necessity had been raised at trial although not passed upon. Over the State's objection the Washington Supreme Court allowed detailed argument on that issue on appeal and found that:
... defendant makes a detailed argument that marijuana is the only reasonably effective drug for relief of the disabling spasticity associated with multiple sclerosis. He proposes on remand to prove:
1. His experience is supported by recent medical research, including the results of a study of 50 patients prepared by Dr. Dennis Petro of Marietta, Pa.
2. He used the marijuana because the drugs which his doctors legally prescribed for him had unpleasant side effects and were not as effective as marijuana in relieving his symptoms; and
3. He attempted, before and after his trial, to obtain marijuana legally through his physicians but they refused his request, based solely upon illegal status of the drug. [604 P.2d at 1315]
The Washington Supreme Court reviewed the defense of necessity from common law through United States v. Randall, supra. It likewise did not comment on whether there was an emergent situation but found significant (against that State's common law background) the fact that the legislature had acted with respect to exempting from the criminal process certain uses of controlled dangerous substances.
The wisdom of the Randall decision was recognized by the legislature in our State when it enacted the Controlled Substances Therapeutic Research Act, Laws of Washington 1979, Reg.Sess. ch. 136, effective March 27, 1979. That legislation recognizes marijuana as a medicinal drug and makes it available under controlled circumstances to alleviate the effects of glaucoma and cancer chemotherapy. The patient must be certified to the State Board of Pharmacy by a licensed physician. In addition, under the Act other disease groups may be included if pertinent medical data is presented to the Board.
The Court simply ignored any requirement of an emergent situation or threat of imminent harm. It concluded:
We believe that the defendant here should be given the opportunity to demonstrate the alleged beneficial effect, if any, of marijuana on the symptoms of multiple sclerosis. Accordingly, we remand his case to the trial court, here the trier of fact, for determination of whether medical necessity exists.[[1]]

*632 In making that determination, the court should refer to the authorities cited in this opinion. To summarize, medical necessity exists in this case if the court finds that (1) the defendant reasonably believed his use of marijuana was necessary to minimize the effects of multiple sclerosis; (2) the benefits derived from its use are greater than the harm sought to be prevented by the controlled substances law; and (3) no drug is as effective in minimizing the effects of the disease. To support the defendant's assertions that he reasonably believed his actions were necessary to protect his health, corroborating medical testimony is required. In reaching its decision, the court must balance the defendant's interest in preserving his health against the State's interest in regulating the drug involved.
It added a final cautionary note:
In conclusion, we emphasize that medical necessity, as a defense to possession, exists only under very limited circumstances not present in the routine case involving controlled substances. [604 P.2d 1316-7.]
Neither the Randall court nor the Diana court seemed at all troubled by the fact that if "medical necessity" justified the criminal conduct in the cases before them, it would justify a continuing course of the same criminal conduct. Glaucoma and multiple sclerosis are, obviously, continuing conditions. The typical common law examples noted above were one-time occurrences. However, the public policy from which the justification of necessity springs is not disserved by applying the justification to a continuing condition as well as to an isolated incident. Though unstated, that must have been the conclusion of both courts.
The New Jersey Legislature has also recognized that marijuana (as well as other Schedule I controlled dangerous substances) may have medicinal value. It enacted, effective March 23, 1981, the Controlled Dangerous Substance Therapeutic Research Act, N.J.S.A. 26:2L-1 et seq. Its legislative findings and declarations are set forth in N.J.S.A. 26:2L-2:
The Legislature finds and declares that recent medical research has shown that the therapeutic use of certain Schedule I controlled dangerous substances may alleviate the nausea and ill-effects of certain medical treatment, such as cancer chemotherapy, and, additionally, may alleviate the ill-effects of certain diseases, such as glaucoma. The Legislature further recognizes that there is a need for further therapeutic research with regard to the use of such controlled dangerous substance for these purposes under strictly controlled circumstances. It is *633 for this purpose that the "Controlled Dangerous Substances Therapeutic Research Act" is hereby enacted.
That research program is limited to patients who are certified to be "in a life-threatening or sense-threatening situation and who are not responding to drugs or where the drugs administered have proven to be effective but where the patient has incurred side effects." N.J.S.A. 26:2L-4(b).
The program and use of Schedule I controlled dangerous substances in effecting its purposes is specifically exempt from the criminal provisions of Title 24. N.J.S.A. 26:2L-9.
There is, then, legislative recognition that marijuana can have medical value in specific cases which then should not come within the ambit of the criminal law. The defendant urges that he should be able to advance, in his individual defense to this criminal charge, similar arguments to those which convinced the legislature to hold, as a matter of policy, that certain uses of marijuana be excluded from criminal prosecution. I rule that he is entitled to make the argument provided that it is supported by adequate proofs. He must be able to demonstrate, by competent evidence, (1) his condition; (2) that it is "sense-threatening"  in his case, that the involuntary spastic episodes are real and painful; (3) that physiological relief (that is, by way of muscle relaxation, "pain-blocking" of the nervous system or the like) does occur and (4) that there is no other licit substance which can be prescribed affording the same benefits but without other deleterious side effects.
The allocation of the burden of proof concerning the defense of justification by reason of necessity is made by the Criminal Code. It is an "affirmative defense" which requires that the defendant first produce evidence supporting it. Once he has done that the ultimate burden falls upon the State to disprove its existence. N.J.S.A. 2C:1-13(b)(1)  and it must disprove it beyond a reasonable doubt  N.J.S.A. 2C:1-13(a) and N.J.S.A. 2C:1-14(b), (c). The finder of fact will be required to *634 determine whether the elements set forth have been disproved. If tried to a jury, the judge, before submitted the case to the jury, will have to determine whether sufficient evidence has been produced on the required elements to raise a factual issue. The underlying value judgment (assuming the required elements do have factual underpinning) as to whether the individual's need outweighs society's interest in enforcing the criminal law must be made by the judge after hearing the proofs.
As noted at the outset, justification by necessity is an expression of public policy. What that public policy means in an individual case is not left to the jurors but rather is decided by the public official presiding  the judge. In all of the cited examples from the common law, that was the case. The judge is believed to be in a better position to determine what is public policy in each case. The New York Code section quoted above specifically requires that procedure. It will be the procedure followed at this trial.

II
The State adopts an alternate position in arguing its motion to strike the defense of justification by reason of necessity. It is this. Assuming, conceptually, that medical necessity can be raised as justification in a particular case, it cannot be raised here because of the existence of an alternative. The State points to the same Controlled Dangerous Substance Therapeutic Research Act discussed above and argues that there was no need for the defendant to illegally possess and use marijuana; that if his medical need could be documented, he should have applied to be admitted into that program and legitimately receive the substance. The argument has facial merit. It relates to that language in N.J.S.A. 2C:3-2(a) which permits the defense of justification based on necessity but only if "neither the Code nor other statutory law defining the offense provides exceptions or defenses dealing with the specific situation involved ..." *635 N.J.S.A. 26:2L-9 specifically exempts possession and use of marijuana occurring within the Research Program.
To establish whether such alternative was a reality, testimony was taken of Thomas T. Culkin, the Executive Director of the Drug Utilization Counsel and Administrator of the Controlled Dangerous Substance Therapeutic Research Act in the State Department of Health.
He testified that the legislative language "life-threatening or sense-threatening" contemplated patients who were having severe side effects from cancer chemotherapy, suffer from glaucoma and those with spastic problems as multiple sclerosis victims. He testified that there is in existence a Federal Program administered by the Bureau of Drugs in the Food and Drug Administration of the U.S. Department of Health and Human Services which permits experimental use of TCH (tetrahydracanabinol) tablets (the active chemical ingredient of marijuana) but that that program is strictly limited to cancer patients.
Insofar as the New Jersey program is concerned, he testified that it has not commenced because of failure of the Legislature to fund it in the past. Monies have become available as of February 1, 1984 and the start-up process is under way. It is anticipated that a program will become available in January, 1985; that at first only cancer patients will be considered but, as funding increases, it will be expanded to include glaucoma sufferers next and then those suffering from spasticity.
Therefore, presently, neither marijuana nor THC is available to Tate through any legitimate source. The Therapeutic Research Act does not provide a real alternative.
For the foregoing reasons, the State's motion is denied. Defense counsel will submit the appropriate order within 10 days.
NOTES
[1] On remand, Diana was tried without a jury and found not guilty based on the defense of medical necessity.