**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2737-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

D.C.N.,[1]

     Defendant-Appellant.

_____

Argued November 1, 2021 – Decided December 1, 2021

Before Judges Fasciale and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-01-0222.

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Scott M. Welfel, of counsel and on the briefs).

Caitlinn Raimo, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause

---

[1] We use initials to protect the identity of the parties and victim referenced in defendant's unrelated other appeal, which we recently adjudicated. R. 1:38-3(c)(12).

for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Caitlinn Raimo, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant appeals from his convictions for second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). He also challenges the trial court's denial of his request to adjourn the sentencing date. We affirm.

I.

The facts as developed at trial are summarized as follows. On November 7, 2014, defendant met his friends Quanisha and S.H.[2] at the Premier Wireless store in Irvington at 2:30 a.m. after finishing work. When defendant entered the back room of the store, he saw a gang member known as "Hennessy," who previously tried to recruit defendant to join the gang. When defendant turned around to leave, Hennessy confronted him, and an argument ensued.

Officer Alex Dorleant was driving home after completing his patrol shift at 2:00 a.m. and heard a "commotion." He observed two individuals arguing and saw defendant, "suspect number one," pull out a gun and point it at "suspect

---

[2] We use initials to protect the identity of the minor.

A-2737-18

number two," Hennessy, who also drew a gun. Defendant and Hennessy were standing three to five feet apart from each other when S.H. got in between them in an attempt to diffuse the situation.

Hennessy continued to approach defendant, who turned, ran eastbound on Springfield Avenue, and crossed the street to the south side of the road. Officer Dorleant made a U-turn, followed defendant, and noticed Hennessy abandon his pursuit of defendant and enter a van. The officer called 9-1-1 to report what he was witnessing, while maintaining visual surveillance of defendant, who continued to run east on Springfield Avenue.

Eventually, defendant stopped at the intersection of Springfield and Stuyvesant Avenues. Officer Brandis Puryear responded to the 9-1-1 dispatch call, and Office Darryl Ewell arrived at the scene shortly thereafter. Officer Puryear stopped her car and exited the vehicle to speak to defendant, who described the assailants he claimed were following him. Upon returning to her vehicle, Officer Puryear was alerted that the man she was speaking with was actually the individual with the handgun she received the dispatch call about.

Officer Puryear then turned back to defendant and said, "Come back here." She asked defendant if he "ha[d] anything on [him]" and he said no, but she conducted a pat down search "just in case." Officer Puryear felt a bulge in

A-2737-18

defendant's left pocket and inquired, "What is this?" but defendant did not respond. She removed a black handgun from defendant's pocket.

Defendant testified he kept the gun concealed in his pocket because he was afraid an officer would shoot him otherwise. Officer Ewell placed defendant in handcuffs and transported him to police headquarters, followed by Officer Puryear, who secured the gun in her vehicle. She was unable to clear the weapon because it was jammed. After arriving at the police station, Officer Ewell noticed a single live round of ammunition sitting on the floor of his patrol car near where defendant had been sitting, which had not been there earlier.

At headquarters, Detective Andres Lebron read defendant his Miranda[3] rights and interviewed him. According to Detective Lebron's testimony, defendant verbally acknowledged understanding the Miranda form before he signed it and waived his rights. Detective Lebron also testified that the interview was recorded, but two days after the interview he learned the system was corrupted, making the recording irretrievable. Detective Lebron did not take notes during defendant's interview but later summarized the exchange from his memory after learning the recording was unavailable. During the interview, defendant attempted to explain his version of the facts, and told Detective

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2737-18

Lebron about Hennessy's involvement, who was identified from a police database as Handral Jeanphillippe. No follow-up was ever done regarding Hennessy's involvement in the incident.

At trial, defendant testified that on the night of the incident, he became afraid and tried to leave after seeing Hennessy at the store. According to defendant, Hennessy tried again to recruit defendant to join his gang, and when he declined, Hennessy pulled a gun out of his jacket and pointed it at defendant. Defendant stated Hennessy pulled the trigger twice and was unable to fire his weapon; defendant then knocked the gun from his hand, picked it up, and ran out of the building. Defendant noticed a van parked outside the store. A man exited the van and ran "at" him. According to defendant, he planned to run directly to the police station in order to turn over the weapon and explain the incident; however, S.H. urged him to stop at Springfield and Stuyvesant Avenues and instead flag down the passing police car driven by Officer Puryear. S.H. was later detained and gave a recorded statement to police.

At trial, defendant was represented by Sharon Amobi, an attorney employed by the Office of the Public Defender (OPD). Officer Lettice Jones of the Essex County Sheriff's Department, a firearms examiner, testified as an expert in ballistics and firearms examination. Officer Jones tested the firearm

recovered from defendant and confirmed the weapon was operable. In addition, Officer Jones noted that the bullets recovered were not capable of being fired from this particular weapon and would cause it to jam if attempted. Officers Ewell, Lebron, and Puryear also testified at trial.

Following a charge conference, the judge instructed the jury. The same day, the jury returned a unanimous verdict, finding defendant guilty on both counts. Shortly after trial, Amobi left the OPD and William Fitzsimmons, another attorney with the OPD, took over defendant's representation and became counsel of record. According to the sentencing transcript and defendant's brief, Fitzsimmons appeared on defendant's behalf "multiple times," and "at scheduled sentencings," but his name does not appear on any transcripts in the record.

At the final sentencing hearing on October 2, 2017, Ann R. Sorrel of the OPD (sentencing counsel), appeared for the first time in connection with this matter, due to Fitzsimmons' unexplained unavailability. Fitzsimmons was ostensibly defendant's counsel of record, and he also allegedly represented defendant in an unrelated matter under Indictment No. 16-6-2019. In that indictment, defendant was charged with burglary, aggravated assault, endangering, and terroristic threats.

A-2737-18

Sorrel requested an adjournment of the sentencing hearing, without providing a clear or cognizable reason for the request. The adjournment request was denied, and the trial court noted that the unrelated matter was still in the early stages, while the present matter had been "kicking around for quite some time." The court further suggested that defendant's attorney of record could seek a concurrent sentence in the unrelated matter, but there was "no reason" to further delay the present matter.

Defendant faced exposure of five to ten years' imprisonment as to each count based on the second-degree nature of the offenses for which he was convicted. In light of his "limited criminal record," Sorrel requested the lowest possible sentence—"a five-year term with a limited period of parole ineligibility . . . a three-year stip." The State requested the sentencing court find aggravating factor three, "[t]he risk that . . . defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), and factor nine, "[t]he need [to] deter[] . . . defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9).

The court found aggravating factors three and nine applied, and mitigating factor eleven, that defendant's imprisonment would entail excessive hardship to him or his dependents, N.J.S.A. 2C:44-1(b)(11). Having determined the aggravating and mitigating factors were qualitatively balanced, the court found

7

a mid-range sentence was appropriate. Defendant was sentenced to seven years' imprisonment with a forty-two-month parole disqualifier on count one; the same term of imprisonment and parole disqualifier were imposed as to count two, to run concurrently with one another. Mandatory fines were assessed.

On appeal, defendant makes the following arguments:

POINT I

THE JURY INSTRUCTIONS WERE FATALLY FLAWED BECAUSE THE JUDGE ERRONEOUSLY INSTRUCTED THE JURY TO APPLY SELF-DEFENSE TO THE UNLAWFUL PURPOSE CHARGE, FAILED TO APPROPRIATELY TAILOR THE UNLAWFUL PURPOSE CHARGE, FAILED TO APPROPRIATELY TAILOR THE SELF-DEFENSE CHARGE TO POSSESSION WITHOUT A PERMIT, AND FAILED TO CHARGE NECESSITY. (Partially Raised Below).

A.   The Court Erred By Instructing The Jury That Self-Defense Applied To The Charge Of Unlawful Purpose, Failing To Explain That The "Self-Protective Purpose" Was Different From "Self-Defense," And By Failing To Charge A Legally Sufficient Unlawful Purpose. (Partially Raised Below).

B.   The Court's Failure To Appropriately Tailor The Self-Defense Charge To The Offense Of Possession Of A Handgun Without A Permit Requires Reversal Of The Conviction On Count One. (Partially Raised Below).

C.   The Court Erred In Failing To Charge Necessity.

POINT II

THE SENTENCE MUST BE VACATED AND REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT DEPRIVED [DEFENDANT] OF EFFECTIVE ASSISTANCE OF COUNSEL BY DENYING THE REQUEST FOR AN ADJOURNMENT OF THE SENTENCING DATE AND ALLOWING THE UNPREPARED ATTORNEY—WHO HAD JUST MET [DEFENDANT] THAT VERY DAY AND WAS NOT COUNSEL OF RECORD—TO REPRESENT HIM. (Partially Raised Below).

We are not persuaded by defendant's contentions.

II.

We first address defendant's argument that the trial court committed plain error by failing to apply self-defense to the unlawful purpose charge and by failing to appropriately tailor the unlawful purpose and self-defense charges to possession without a permit and in not charging necessity. At the outset, we note defendant never objected on the record to the final jury charges. Therefore, we review for plain error. "When a defendant fails to object to an error or omission [about a jury charge], . . . we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Reversal is warranted only where an error raises "a reasonable doubt . . . as to whether the

error led the jury to a result it otherwise might not have reached." Ibid. (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). "The mere possibility of an unjust result is not enough." Ibid. (citing State v. Jordan, 147 N.J. 409, 422 (1997)).

Appropriate and proper jury instructions "are essential for a fair trial." Prioleau V. Ky. Fried Chicken, Inc., 223 N.J. 245, 256 (2015) (quoting Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000)); State v. Afanador, 151 N.J. 41, 54 (1997) (citing State v. Martin, 119 N.J. 2, 15 (1990)). In its jury charges, a "trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" State v. Baum, 224 N.J. 147, 159 (2016) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). Accordingly, "the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)).

We review jury instructions as a whole, State v. Delibero, 149 N.J. 90, 107-08 (1997), particularly if the trial court erred in one part of the charge, but correctly instructed the jury elsewhere. See State v. McKinney, 223 N.J. 475,

10

496 (2015). And, we may find an error harmless based on "the isolated nature of the transgression and the fact that a correct definition of the law on the same charge is found elsewhere in the court's instructions." Baum, 224 N.J. at 160 (quoting State v. Sette, 259 N.J. Super. 156, 192 (App. Div. 1992)); see also State v. Medina, 147 N.J. 43, 55 (1996) (declining to reverse based on judge's erroneous explanation of State's burden of proof where "[i]mmediately after delivering the offending clause, the court provided a more accurate explanation of the State's burden.") When reviewing jury instructions, we must examine each "remark in the context of the entire charge." State v. DiFrisco, 137 N.J. 434, 491 (1994) (citing State v. Marshall, 1123 N.J. 1, 145 (1991)).

Finally, we may disregard a flaw in the trial court's instruction if the defendant invited or encouraged it. See State v. A.R., 213 N.J. 542, 561-62 (2013) (stating absent a fundamental injustice, an appellate court may not reverse based on the trial court's errors that defense counsel induced or encouraged, or to which counsel consented); State v. Ramseur, 106 N.J. 123, 281-82 (1987) (applying the invited error doctrine to the defendant's request for specific jury instructions). Although defendant alleges his disagreement with the jury charges was "partially raised below," our review of the record reveals

neither he nor his counsel ever objected on the record to the final jury charges. Therefore, we review the charges under the plain error standard.

Defendant asserts the trial court erroneously instructed the jury that self-defense could apply to the unlawful purpose charge, failed to distinguish between self-defense and a self-protective purpose, and failed to charge a legally sufficient unlawful purpose. In State v. Harmon, 104 N.J. 189 (1986), our Court summarized the elements required to sustain a conviction for possession with an unlawful purpose pursuant to N.J.S.A. 2C:39-4(a):

> [T]he State must prove beyond a reasonable doubt the following four facts: (1) the item possessed was a "firearm" within the meaning of N.J.S.A. 2C:39-1(f); (2) the defendant "possessed" it, which under N.J.S.A. 2C:2-1(c) requires knowledge or awareness of his control over the item; (3) the defendant's purpose or conscious objective was to use it against the person or property of another; and (4) the defendant intended to use it in a manner that was proscribed by law.
>
> [Id. at 212 (citations omitted).]

Defendant argues the trial court erred by advising the jury that the self-defense statute was relevant as to whether he had an unlawful purpose, but the correct inquiry should have been whether defendant had a self-protective purpose, not whether he acted in self-defense. Self-defense serves as an affirmative defense justifying an act that would otherwise constitute a crime.

<u>See</u> N.J.S.A. 2C:3-4. On the other hand, a self-protective purpose is simply an alternative explanation for the purpose with which a defendant acted, and if found, renders a finding of an unlawful purpose an impossibility.

Our Court made clear in <u>Harmon</u>, that self-defense as a justification pursuant to N.J.S.A. 2C:3-4, is relevant to the offense of possession without a permit but is not relevant to the offense of possession for an unlawful purpose. <u>See</u> 104 N.J. at 207. The distinction lies in the requisite mens rea—self-defense requires a "reasonable" belief, while a self-protective purpose demands only an "honest" belief. <u>Ibid.</u> Conversely, if a defendant has only an honest, but not a necessarily reasonable belief that possession of a weapon is necessary for self-protection, then the elements of possession for an unlawful purpose cannot be established. <u>See</u> <u>ibid.</u>

Here, the trial court analyzed the self-defense statute and defined the pertinent legal terms. Defendant argues a short paragraph contained in the court's explanation of the self-defense statute erroneously suggested to the jury that the self-defense statute was relevant and applicable to its deliberations in respect of the unlawful purpose charge:

> Now, the indictment charges that the defendant has committed a crime of unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. The defendant contends that if the State proves he used

or threatened to use force upon other per . . . another person, that such force was justifiably used for his self-protection.

Nowhere in this paragraph did the trial court use the words "self-defense." Later in its instructions, the court specifically elaborated on the requisite standard to find a self-protective purpose by emphasizing "the State must prove beyond a reasonable doubt that the defendant had an unlawful purpose at the time in question." The trial court added if the jury "find[s] . . . the defendant had . . . a lawful purpose, for example, to use the firearm to protect himself," then the State has not carried its burden of proof on that element of the crime. Applying these guiding principles, we conclude the trial court correctly espoused the relevant standard to establish a finding of self-protective purpose. The instructions were not fatally flawed and were based upon supporting evidence in the record.

Similarly, defendant argues the trial court failed to sufficiently explain the difference between self-defense and a self-protective purpose, as required by State v. Williams, 168 N.J. 323, 338-39 (2001), constituting reversible error. In Williams, our Court noted the trial "court was required to explain to the jury that in order to negate the unlawful purpose element of the possession offense, [defendant]'s belief in his need to fire the gun did not need to be reasonable, as

14

is required to establish a justification defense to the substantive charges." Id. at 338. The Court further stated "[i]rrespective of [defendant]'s failure to request it, the court should have instructed the jury that even if it found his explanation . . . to be unreasonable, it nevertheless had to consider whether that belief was an honestly held one." Id. at 339. We find no merit to these contentions.

The trial court here explicitly noted that an honest but unreasonable belief was sufficient for the jury to find a self-protective purpose, which would allow them to acquit defendant on the unlawful purpose charge. Moreover, the court properly instructed the jury "for [the] purposes of this offense, if a defendant honestly believed that he needed to use a firearm to protect himself, the law does not require that this belief be reasonable" and reiterated, "[i]n other words, if the defendant had an honest though unreasonable belief that he needed to use the weapon to protect himself, this negates the purposeful mental state required of this offense." (emphasis added). Accordingly, the court sufficiently explained the difference in the mens rea requirement for self-defense and a self-protective purpose. Therefore, there was no error, let alone plain error warranting reversal.

Finally, defendant contends the unlawful purpose charge was insufficient to sustain a guilty finding pursuant to N.J.S.A. 2C:39-4. "[A] jury instruction on a charge of gun possession for [an] unlawful purpose must include an

15

identification of such unlawful purposes . . . ." <u>Williams</u>, 168 N.J. at 340 (quoting <u>State v. Jenkins</u>, 234 N.J. Super. 311, 316 (App. Div. 1989)). Defendant alleges that based on <u>Harmon</u>, the mere act of pointing a gun at another person is insufficient to constitute an unlawful purpose, and therefore, the judge did not charge a legally sufficient unlawful purpose.

In <u>Harmon</u>, the Court reversed and remanded for a new trial, not because pointing a gun at another person is an insufficient unlawful purpose, but because the trial had unfolded in a manner "which the physical act of pointing the gun blended into the state of mind" required and resulted in clear confusion amongst the jury. 104 N.J. at 194-95, 214-15. Despite defendant's argument to the contrary, <u>Harmon</u> did not announce a bright-line rule that pointing a gun at another person is an insufficient unlawful purpose. Moreover, the Court's holding was fact sensitive and underscored that the lack of detail regarding the unlawful purpose was insufficient. <u>See</u> <u>id.</u> at 210-11.

The Court also noted "[w]e are confident that juries in most cases will have little problem inferring the accused's subjective state of mind from the circumstances attendant to his possession of a dangerous weapon." <u>Id.</u> at 211 (citing in part <u>State v. Latimore</u>, 197 N.J. Super. 197, 211 (App. Div. 1984))

16

(finding that an inference of unlawful purpose may be drawn from surrounding circumstances).

Here, the trial court charged the jury that "defendant's unlawful purpose in possessing the weapon was pointing the weapon at another person."  The State's theory was that defendant pointing a gun at Hennessy was an unlawful purpose because it was an attempt to intimidate and/or threaten him, which could be inferred from surrounding circumstances presented at trial.  The jury did not indicate it was confused by the distinction, or about the act that would be sufficient to find defendant had an unlawful purpose.

The record shows the surrounding circumstances and evidence produced at trial more than support an inference that defendant had an unlawful purpose.  And, Officer Dorleant testified that defendant pulled out a gun before Hennessy pointed one at him.  Therefore, the jury instructions followed a logical sequence, and the court correctly charged a sufficient unlawful purpose—pointing the weapon at another person.

Here, the trial court utilized the standard self-defense charge, as requested by defendant, and elected not to tailor the charge to the specific facts of the present case.  In some instances, a court may be required to tailor the Model Jury Charge to the facts of the case in order to assist the jury and ensure they do

not "take a wrong turn in its deliberations." Martin, 119 N.J. at 15. Generally, a court retains "broad discretion on whether to grant the request" to provide a tailored instruction or specific charge. Green, 86 N.J. at 290. Jury instructions "molded" or "tailored" to the relevant evidence in the case have been required where "the statement of relevant law, when divorced from the facts, was potentially confusing or misleading to the jury." State v. Robinson, 165 N.J. 32, 42 (2000) (citations omitted). We have previously noted that "it is always appropriate and sometimes mandatory to tailor a charge to the facts of a case." State v. Angoy, 329 N.J. Super. 79, 85 (App. Div. 2000) (citing State v. Concepcion, 111 N.J. 373 (1988)). However, where "the facts of the case and the claims of the State and the defense [are] quite clear" it does not constitute prejudicial error to not tailor the charge, even if "the charge might have been more specific." Ibid.

Here, defendant neither objected to the charge as given, nor did defendant request that the charge be tailored to the facts of his case. Defendant references several cases in his brief, which were reversed because the trial court failed to tailor the charge to the case. The cited cases are distinguishable from the matter under review because each case required a tailored charge based on the complexity of the theories and offenses involved. See, e.g., State v. Savage, 172

18

N.J. 374 (2002) (finding the trial court should have clarified the jury could find accomplices had varying levels of culpability in a conspiracy); State v. Gartland, 149 N.J. 456 (1997) (reversing where the judge should have explained battered woman syndrome to the jury); Concepcion, 111 N.J. 373 (finding the trial court should have instructed the jury to make a preliminary finding as to the facts of the case, and only then evaluate whether the defendant was guilty of reckless manslaughter). Here, we presume the jury understood the charge as given and defendant has not demonstrated plain error in not tailoring the self-defense charge.

Defendant also contends that the trial court erred by failing to charge the jury with the defense of necessity. Prior to trial, defense counsel submitted a notice of defense, indicating that defendant planned to raise the defense of necessity, among others. The State filed a motion in limine opposing the defense of necessity, but the court denied the motion, noting the motion was premature, and would be revisited at the close of the evidence. Subsequently, at the final charge conference on May 15, 2017, there was lengthy discussion between the trial court and counsel for each party as to the appropriate defenses to be charged.

Defense counsel vehemently requested the self-defense charge—not necessity—be given. Ultimately, the trial court complied and charged self-defense rather than necessity. As to the discussion at the charge conference, and pertinent to whether to charge self-defense or necessity, the following colloquy occurred:

> THE COURT: It, it might be necessity might be the more appropriate charge.
>
> . . . .
>
> THE COURT: He extracted . . . . himself from that situation and he was running and waving down a police car. Okay? So, the question is does, does it really go more to I took the gun because I needed to take the gun, more a necessity issue than really a self-defense issue?
>
> . . . .
>
> THE COURT: Now, the question is whether or not we're going to issue a self-defense argument or we're going to do a necessity charge. That's the question.
>
> . . . .
>
> DEFENSE COUNSEL: Judge, I'm gonna ask for the self-defense charge. . . . [T]hat would be my position, [j]udge, is that I would be asking for the self-defense justification.

At the charge conference, defendant therefore requested self-defense, not necessity. And he did not object to the final charge, which not unsurprisingly

20

omitted instructions on the defense of necessity. As we pointed out, defendant vehemently requested the court charge the jury on self-defense rather than (at the charge conference) necessity. In response to the judge's questioning at the conference about whether to charge self-defense or necessity, defense counsel asked for a charge on self-defense. To the extent that such a selection can be deemed an abandonment of the necessity defense, the invited error doctrine is implicated. In that case, defendant would be barred "from raising an objection for the first time on appeal." A.R., 213 N.J. at 561 (citing N.J. Div. of Youth & Fam. Serv. v. M.C. III, 201 N.J. 328, 342 (2010)). Nevertheless, we address the merits of defendant's contention that the judge erred by not charging necessity.

Defendant's reliance on our holding in State v. Gentry, 439 N.J. Super. 57 (App. Div. 2015), is misplaced. In Gentry, we stated that "[w]here there is sufficient evidence to warrant a self-defense charge, failure to instruct the jury that self-defense is a complete justification for manslaughter offenses as well as for murder constitutes plain error." Id. at 67 (emphasis added) (citing State v. O'Neil, 219 N.J. 598, 617 (2014)). Gentry, however, has not been interpreted to require trial courts to sua sponte charge all defenses the evidence may support as a justification for all types of offenses. Instead, the Gentry holding applies solely to the defense of self-defense as justification in homicide cases. We note

in State v. R.T., 205 N.J. 493, 509 (2011), our Court expanded on the principles previously espoused in State v. Walker, 203 N.J. 73 (2010). In R.T., the Court clarified:

> [W]here counsel requests a charge on a defense, it will be given if there is a rational basis in the evidence to do so. Where counsel does not request an instruction [on a defense], the "clearly indicated" standard will apply. That standard does not require the court "to sift through the entire record . . . to see if some combination of facts and inferences might rationally sustain" a charge, State v. Choice, 98 N.J. 295, 299 (1985), instead, the need for the charge must "jump off" the proverbial page. [State v.] Denofa, 187 N.J. [24], 42 [(2006)].
>
> [205 N.J. at 509-10 (Long, J., concurring) (emphasis added) (alteration in original).]

However, "[t]rial courts must carefully refrain from preempting defense counsel's strategic and tactical decisions and possibly prejudicing defendant's chance of acquittal. The public interest, while important, may not overwhelm defendant's interest in pursuing a legitimate defense in the complex setting of a criminal trial." Id. at 510 (Long, J., concurring) (alteration in original) (quoting State v. Perry, 124 N.J. 128, 162-63 (1991)). Accordingly, trial courts should not sua sponte charge defenses, especially in cases where, such as here, defense counsel clearly indicated a preference for the language and substance of a different defense.

Finally, a defendant must prove an affirmative defense before the State is required to disprove it. See N.J.S.A. 2C:1-13(b)(1). There are four elements a defendant is required to prove to establish the defense of necessity: (1) an emergency occurred without fault on his part; (2) the emergency created an imminent, reasonable expectation of harm; (3) there was no reasonable opportunity to avoid the injury without doing the criminal act; and (4) the injury impending from the emergency was sufficient to outmeasure the criminal wrong. State v. Romano, 355 N.J. Super. 21, 29 (App. Div. 2002) (quoting State v. Tate, 194 N.J. Super. 622, 628 (App. Div. 1984)).

Here, even viewing the evidence "in the light most favorable to defendant," there is irreconcilable gap from when defendant approached Officer Puryear, and when the firearm was ultimately discovered on his person. State v. Rodriguez, 195 N.J. 165, 170 (2008) (quoting State v. Galloway, 133 N.J. 631, 648 (1993)). Because defendant did not immediately relinquish his weapon to the officer, the defense of necessity is inherently unavailable. And, once Officer Puryear stopped to speak with defendant, any possible necessity defendant had to temporarily possess the weapon immediately terminated; yet he chose to maintain possession of it. We conclude the trial court did not err by

23

not charging the defense of necessity because the evidence did not support the defense.

## III.

Next, we address defendant's argument that the trial court erred in denying an adjournment of the sentencing hearing. We review the denial of a motion for an adjournment, which involves the trial court's ability to manage its own calendar, under a deferential standard. State v. Miller, 216 N.J. 40, 65 (2013). "'[W]hether a trial court should grant or deny a defendant's request for an adjournment . . . requires a balancing process informed by an intensely fact-sensitive inquiry.'" Id. at 66 (quoting State v. Hayes, 205 N.J. 522, 538 (2011)). Defendant motioned to adjourn the sentencing hearing because his former counsel had been replaced. In denying the motion for an adjournment, defendant argues that the trial court deprived him of his constitutional right to effective assistance of counsel.

With regard to a defendant's motion to adjourn, "'there are two conditions which must exist to warrant' reversal of the conviction." Miller, 216 N.J. at 66 (quoting Hayes, 205 N.J. at 539). "First, 'the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances.'" Ibid. (quoting Hayes, 205 N.J. at 539). Second, the decision

must have prejudiced the defendant such "that the defendant suffered manifest wrong or injury."  Id. at 66-67 (quoting Hayes, 205 N.J. at 537).

In Hayes, our Court outlined "some" factors to be weighed in deciding whether to grant a defendant's motion to adjourn the trial to retain counsel, or as here, to have counsel become familiarized with the case.  205 N.J. at 538. The factors include:

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [Ibid. (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985)).]

But "a lengthy factual inquiry is [not] required."  State v. Kates, 216 N.J. 393, 397 (2014).

Here, attorney Sorrel, also of the OPD, made her request for an adjournment on the day of the sentencing hearing but provided no exceptional circumstance justifying the timing of replacing defendant's former counsel. Indeed, in her opening remarks at the sentencing hearing, Sorrel stated "[defendant] speaks more than sufficient English," "he has reviewed the . . . [p]re-[s]entence [r]eport and there are no changes, corrections, amendments or additions," and that she "also discussed with [defendant] his appeal rights." And, the record shows Sorrel never suggested she was unprepared to proceed and in fact, demonstrated familiarity with the matter by requesting a recalculation of jail credits. Therefore, we discern no prejudice or abuse of discretion.

Defendant further contends the trial court abused its discretion in denying the request to adjourn the sentencing hearing based on a claim of ineffective assistance of counsel. This claim is raised for the first time on appeal, without a previously-filed sworn statement "alleg[ing] facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). We have cautioned, "the Law Division should, in the first instance, hear [post-conviction relief (PCR)] petitions raising claims of ineffective [trial or] appellate counsel." State v. Gaither, 396 N.J.

Super. 508, 513 (App. Div. 2007) (citing State v. Calloway, 275 N.J. Super. 13, 15 (App. Div. 1994)).  This is because, these claims are better reserved for PCR where, as here, they "involve allegations and evidence that lie outside the trial record" and because the attorney's testimony may be required.  State v. Castagna, 187 N.J. 293, 313 (2006) (quoting State v. Preciose, 129 N.J. 451, 460-62 (1992)).  Therefore, we decline at this juncture to address defendant's claims of ineffective assistance of counsel, which can be more appropriately addressed in a PCR petition.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-2737-18